SALVADOR J. RAMETTA, Appellant, v DOLORES C. R. KAZLO, Respondent.

Second Department, July 2, 1979

### APPEARANCES OF COUNSEL

*Philip V. Manning (James F. Ryan* of counsel), for appellant.

*Bracken & Jacoppi (John P. Bracken* of counsel), for respondent.

### OPINION OF THE COURT

*Per Curiam.*

In this action to set aside a deed and to recover damages based upon the conversion of two bank accounts, the plaintiff appeals from a judgment of the Supreme Court, Suffolk County, which, after a nonjury trial, denied the relief sought and dismissed the complaint. The judgment should be affirmed.

Plaintiff is the father of defendant. The real property involved in the dispute is located in Lake Ronkonkoma, New York. The defendant has lived in the house on the property since 1953. The defendant's parents came to the house every weekend and also spent their vacations there. It was purchased by the defendant and her first husband with a down payment supplied by the plaintiff and his wife, Charlotte. Her father paid a substantial amount of the mortgage. However, she expended greater sums by way of improvements to the house. Record title to the house has shifted over the years since the defendant and her first husband purchased it. In 1956 the defendant's first husband deeded his interest to his wife. In 1959 the defendant deeded her interest to the plaintiff and his wife, her mother. There was testimony by the defendant that this was done on the advice of plaintiff, an attorney, to protect the property from falling back into the hands of her husband, at a time when she was experiencing marital difficulties. In 1960 two deeds were prepared with respect to the premises. One ran from the plaintiff and his wife to the wife

alone. This was eventually recorded in 1968. The other ran from the plaintiff and his wife to the plaintiff alone and was never recorded. The defendant testified that the first deed was recorded in 1968 because her father was ill and feared he would predecease his wife. In fact, she predeceased him in 1973. Then, the plaintiff executed a deed, as executor and sole legatee of his wife's estate, to the defendant on September 4, 1974. This deed was not recorded until July 12, 1976.

There was conflicting testimony on the issue of delivery of the 1974 deed. The plaintiff claimed he kept it in a "strong-box" and that his daughter took it from there. The defendant claimed that her father delivered it to her right after it was acknowledged. The trial court found that plaintiff failed to prove nondelivery by a preponderance of the credible evidence. The defendant was aided by the presumption of delivery arising from recordation (see *Sweetland v Buell,* 164 NY 541, 552). In addition, she had direct testimony concerning delivery. Where the evidence presented to rebut a presumption raises an issue of credibility, it is for the trier of fact to determine whether the presumption has been defeated (Richardson, Evidence [10th ed], § 58). This court should not disturb the finding of the trier of fact based on a weighing of credibility, absent a clear indication that the defendant's testimony was incredible as a matter of law.

The suit also sought damages for the conversion of two Totten trust accounts. It is undisputed that the two accounts were created from the plaintiff's funds obtained after the sale of his home in Brooklyn. The accounts were in the name of "Dolores C. Rametta, in trust for Salvador J. Rametta Power of Attorney Salvador J. Rametta". In order to sustain the gift of this money to the defendant, the court must find the existence of a donative intent, delivery, and acceptance by the donee. (See *Matter of Szabo,* 10 NY2d 94, 98; *Matter of Van Alstyne,* 207 NY 298, 306.) A donative intent may be inferred from the act of placing funds in the name of the donee, in what was then a close family situation. The plaintiff had previously given the defendant fur coats and substantial sums of money. Unconditional delivery may be established by placing the money in a Totten trust in the name of the donee. (This act constituted a change in dominion and control of the money [see *Matter of Szabo, supra,* p 98].) It is well settled that such an account vests no interest in the beneficiary and the owner of the account is free to dispose of those funds in

any manner. *(Matter of Totten,* 179 NY 112.) The reservation of a power of attorney by the beneficiary does not demonstrate a different intent, since such power does not allow the agent to benefit himself. *(Matter of Lalor,* 28 AD2d 66.) Finally, acceptance of the gift is clearly demonstrated by the fact that the donee declared the interest from these accounts on her income tax returns. Accordingly, the judgment of the trial court should be affirmed.

SUOZZI, J. P., and COHALAN, J. (dissenting). We dissent and vote to reverse the judgment and grant a new trial on the causes of action pleaded in the complaint.

With respect to the cause of action to void a deed of record, it was plaintiff's testimony that he executed and acknowledged a deed to the defendant dated September 4, 1974. The deed was not delivered to defendant at that time, but was placed in an envelope on which the following words were written: "Under no circumstances are the contents of this envelope to come into possession of my Daughter, Dolores, under any circumstances, until my death, S. J. R., Nov. 18/ 74". The envelope was placed in a locked "strongbox". According to plaintiff, the defendant opened the locked box, withdrew the deed and recorded it on July 12, 1976.

Defendant claimed that the deed was handed to her after it was acknowledged.

With respect to the conversion of the two Totten trust accounts (i.e., actually a savings account passbook and a savings certificate), which concededly were created from plaintiff's funds after the sale of his home in Brooklyn, plaintiff alleged, *inter alia,* that the money was placed in defendant's name in trust for himself and that it was the intention of the parties that the funds were to become the sole property of the defendant when he died. Plaintiff further alleged (1) that he kept the bankbook and, in July of 1976, the defendant improperly took it and withdrew the money and (2) that defendant improperly had his name deleted from the savings certificate. Each account contained a power of attorney in favor of plaintiff, and he argues that this fact, coupled with testimony that the bank accounts were never voluntarily given to the defendant donee, negates any presumption of delivery which is an essential element in proving a gift.

Defendant argues that plaintiff set up the two accounts in her name in trust for him so that if anything happened to her

it would not be taxed to her estate, but that she had total control and dominion over them.

In accepting defendant's version of the transactions and holding that valid gifts had been made to her of the realty and the funds described in the three causes of action, the trial court necessarily rejected plaintiff's testimony and in its decision, the trial court specifically stated that plaintiff was worthy of "little credibility". However, it further appears from the decision of the trial court that the latter was suspicious of plaintiff merely because he was a lawyer and was strongly influenced by its assumption that plaintiff's preparation of the unrecorded deed and the setting up of the bank accounts, manifested an intent by him to fraudulently evade the tax statutes and that he was guilty of "unclean hands". (The trial court did not address itself to the significance, if any, of the power of attorney in favor of plaintiff on both bank accounts.)

Although a trial court, in weighing the credibility of a witness, may give weight to a conviction of a crime or any immoral or criminal act of his life which may affect his character and show him to be unworthy of belief (CPLR 4513; *Shepard v Parker,* 36 NY 517, 518), this record is totally devoid of any evidence of fraudulent intent on the part of plaintiff to avoid the payment of taxes. Indeed, plaintiff's conduct was readily explainable as simply the normal desire of an elderly man to hold onto his property as long as possible and in no event did it rise to a level which could serve as the basis for impeaching his credibility.

Nor was the doctrine of unclean hands properly invoked. Apart from the fact that this equitable defense was not pleaded by the defendant, it was totally inappropriate under the facts at bar. In *National Distillers & Chem. Corp. v Seyopp Corp.* (17 NY2d 12, 15-16), the Court of Appeals stated: "In the first place it is never used unless the plaintiff is guilty of immoral, unconscionable conduct and even then only 'when the conduct relied on is directly related to the subject matter in litigation and the party seeking to invoke the doctrine was injured by such conduct' ".

In light of this definition, it can hardly be argued that plaintiff was, as noted by the trial court, guilty of unclean hands and if allowed to prevail, would "profit by unethical conduct." Indeed, the record indicates that it was defendant who profited from plaintiff's largesse from 1960 to 1974, since during that period, the latter paid for several substantial

improvements, including a driveway and swimming pool, and made all payments on the mortgage until it was paid off, as well as taxes.

Accordingly, the judgment entered in favor of defendant should be reversed and a new trial granted.

LAZER, GULOTTA and SHAPIRO, JJ., concur in *Per Curiam* opinion; SUOZZI, J. P., and COHALAN, J., dissent and vote to reverse the judgment and grant a new trial, with an opinion.

Judgment of the Supreme Court, Suffolk County, entered March 1, 1978, affirmed, without costs or disbursements.