**Carl F. LuGRAIN, Appellant,**

v.

**STATE of Iowa, Appellee.**

**Loren Jay ROSS, Appellant,**

v.

**STATE of Iowa, Appellee.**

**Nos. 90–1725, 90–1853.**

Supreme Court of Iowa.

Dec. 24, 1991.

Mary K. Hoefer of Mears Law Office, Iowa City, for appellant LuGrain.

Philip B. Mears of Mears Law Office, Iowa City, for appellant Ross.

Bonnie J. Campbell, Atty. Gen. and William A. Hill, Asst. Atty. Gen., for appellee.

Considered by HARRIS, P.J., and LARSON, CARTER, LAVORATO, and SNELL, JJ.

LAVORATO, Justice.

In this consolidated appeal, two prison inmates raise two common issues. First, they challenge the constitutionality of a prison rule. Second, they contend the evidence was not sufficient to support their convictions for allegedly violating this rule. Under the rule a prisoner may be punished for possession of drugs if the inmate fails to provide a urine sample within two hours of a request to do so. Both inmates had allegedly failed to provide such samples and were found guilty of violating the rule. After exhausting their administrative remedies, each inmate filed an application in the district court, seeking postconviction relief. *See* Iowa Code §§ 663A.2(6) and 663A.3 (1989). The district court denied both applications, and both inmates appealed. We affirm.

## I. *Background Facts.*

During the fall of 1989, in two unrelated incidents, Carl F. LuGrain and Loren Jay Ross—inmates at the Iowa Men's Reformatory—were ordered to provide urine samples to prison officials for drug testing. The urine samples were to be tested for the presence of the substance tetrahydrocannabinol (THC), the active ingredient in marijuana.

Both inmates were being considered for "out custody status" (eligibility to work outside the prison walls, or "outs"). An institutional rule provides that inmates being considered for out custody status must undergo random drug testing beforehand.

In addition, prison rule 20 states that an "[i]nmate must provide a urine sample within two hours of [a] request." The rule goes on to state that "[f]ailure to do so will constitute [a] violation" of the rule prohibiting possession of drugs.

LuGrain and Ross were told that failure to provide a urine sample within the two hour time limit would result in (1) the issuance of a disciplinary report and (2) a probable determination at a disciplinary hearing that each had violated rule 20. Neither LuGrain nor Ross provided a urine sample within the two hour time limit.

The prison disciplinary committee found that both inmates had violated rule 20. As a result, both inmates suffered, among other things, a loss of good conduct time credits. *See* Iowa Code § 903A.2.

## II. *Background Proceedings.*

After exhausting their administrative remedies, both inmates filed applications for postconviction relief. *See* Iowa Code §§ 903A.3, 663A.3. Both challenged rule 20 on federal due process grounds. They contended that the rule created an irrebuttable presumption of drug possession based on an inability to produce a urine sample. In addition, both inmates challenged the committee's decisions on the grounds that the decisions were not supported by the evidence.

The district court denied both applications, and both inmates appealed. Because both inmates raised similar issues, we consolidated their appeals.

## III. *The State's Motion to Dismiss.*

■ Before July 1, 1990, postconviction applicants had a direct right of appeal from adverse prison disciplinary rulings. *See* Iowa Code § 663A.9 (1989). On July 1, 1990, an amendment to this section went into effect. The amendment abrogates this direct right of appeal and now permits instead an appeal by writ of certiorari. *See* 1990 Iowa Acts ch. 1043. The amendment, now codified at Iowa Code section 663A.9 (1991), added the italicized language below:

An appeal from a final judgment entered under this chapter may be taken, perfected, and prosecuted either by the applicant or by the state in the manner and within the time after judgment as provided in the rules of appellate procedure for appeals from final judgments in criminal cases. *However, if the applicant is seeking an appeal under section 663A.2, subsection 6 [loss of good conduct time credits], the appeal shall be by writ of certiorari.*

(Emphasis added.)

The State has filed a motion to dismiss Ross' appeal. The State contends Ross no longer has a direct right to appeal from his adverse prison disciplinary ruling. The reason, the State argues, is because Ross filed his notice of appeal after the amendment went into effect.

Ross' discipline took place in October 1989. His postconviction relief action was filed in December 1989. The district court heard the case in September 1990, and rendered its decision on October 31, 1990. Ross appealed to this court on November 13, 1990, more than four months after the amendment went into effect.

Today we hold that the amendment does not apply to judgments in disciplinary proceedings rendered before the effective date of the amendment. *James v. State*, 479 N.W.2d 287, 290 (Iowa 1991). Our holding in *James* is based on the general rule that statutes controlling appeals are those that were in effect at the time the judgment or order appealed from was rendered. *Id.* Under this rule the amendment applies to Ross' case because the amendment was in effect at the time the district court rendered its decision.

However, today we also hold that the amendment is invalid because the right of direct appeal is not reciprocal between the State and the postconviction relief applicant. *Shortridge v. State*, 478 N.W.2d 613, 615 (Iowa 1991). In short, the State has the right of direct appeal under the statute as amended but the applicant does not. This is an inequality, we said, that cannot be permitted. *Id.*

Our decision in *Shortridge* leaves intact the right of direct appeal for postconviction

relief applicants who appeal from adverse prison disciplinary rulings.

Ross' challenge to the amendment is based on the same reasoning we used in *Shortridge* to rule the amendment invalid. That leaves us no option but to overrule the State's motion to dismiss and proceed to the merits of both appeals.

### IV. *The Federal Due Process Challenge to Rule 20.*

The two inmates here raise identical federal due process challenges to rule 20. *See* U.S. Const. amend. XIV ("nor shall any State deprive any person of ... liberty, ... without due process of law ..."). They claim that the rule creates an irrebuttable presumption of drug possession when an inmate is unable to provide a urine sample for drug testing. This, they say, violates fundamental due process.

■ Iowa law permits an inmate to earn good conduct time credits. *See* Iowa Code § 903A.2. That being the case, the inmate has a constitutionally protected liberty interest in those credits. So the State may not deprive the inmate of such credits without observing minimum federal due process requirements. *Superintendent, Massachusetts Correctional Inst. v. Hill*, 472 U.S. 445, 455, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356, 364 (1985) (revocation of good time must comport with fourteenth amendment minimal procedural due process requirements); *Wolff v. McDonnell*, 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935, 951 (1974) (prisoner's interest in good time entitles the prisoner to minimum procedures required by due process under the fourteenth amendment).

Because constitutional rights are involved, our review is de novo "in light of the totality of the circumstances and record upon which the postconviction court ruling was made." *Rushing v. State*, 382 N.W.2d 141, 143 (Iowa 1986).

A presumption is a deduction that the law expressly directs to be made from particular facts. *Bridges v. Welzien*, 231 Iowa 6, 10, 300 N.W. 659, 662 (1941). One treatise writer distinguishes between a rebuttable and an irrebuttable presumption this way:

> The term presumption as used above always denotes a rebuttable presumption, i.e., *the party against whom the presumption operates can always introduce proof in contradiction.* In the case of what is commonly called a conclusive or irrebuttable presumption, when fact B is proven, fact A must be taken as true, and *the adversary is not allowed to dispute this at all.* For example, if it is proven that a child is under seven years of age, the courts have stated that it is conclusively presumed that he could not have committed a felony. *In so doing, the courts are not stating a presumption at all, but simply expressing the rule of law that someone under seven years old cannot legally be convicted of a felony.*

*McCormick on Evidence* § 342, at 804 (E. Cleary 2d ed. 1972) (emphasis added); *accord Farnsworth v. Hazelett*, 197 Iowa 1367, 1370–71, 199 N.W. 410, 411–12 (1924). The italicized language says three things. First, in the case of a rebuttable presumption, the party against whom the presumption operates can always introduce evidence to rebut the presumption. Second, in the case of an irrebuttable presumption, no such evidence is permitted. Third, an irrebuttable presumption is not a rule of evidence at all; it is a substantive rule of law.

We agree with LuGrain and Ross that the United States Supreme Court has "uniformly condemned irrebuttable presumptions" as violations of federal due process. *See, e.g., Vlandis v. Kline*, 412 U.S. 441, 446, 93 S.Ct. 2230, 2233, 37 L.Ed.2d 63, 68 (1973) ("permanent irrebuttable presumptions have long been disfavored under the due process clauses of the fifth and fourteenth amendments"); *see also, Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 647–48, 94 S.Ct. 791, 799–800, 39 L.Ed.2d 52, 64 (1974) (irrebuttable presumption that pregnant women are incapacitated from teaching is invalid under due process clause of the fourteenth amendment); *Stanley v. Illinois*, 405 U.S. 645, 654–58, 92 S.Ct. 1208, 1214–16, 31 L.Ed.2d 551, 560–62 (1972) (statute containing irrebuttable presump-

tion that unmarried fathers are incompetent to raise their children violates due process under the fourteenth amendment).

▆ With these principles in mind we turn to rule 20 to determine whether it creates an irrebuttable presumption. Rule 20 provides:

*Possession of Drugs, Intoxicants:* An inmate commits an offense under this subsection if the inmate makes, hides, consumes, inhales, or possesses:

a. Any quantity of unauthorized dangerous drugs, or,

b. A syringe or other implement capable of injecting a substance under the skin of an individual, an article, equipment or apparatus for the use or manufacture of a drug, intoxicant, or volatile substance.

c. An inmate with a positive urinalysis, blood test or breath test shall be considered to be a presumption (sic)—that inmate is in posession (sic) of the drug or intoxicant for which tested.

d. *Inmate must provide a urine sample within 2 hours of request. Failure to do so will constitute violation of this rule.* In such cases the inmate shall be placed in an area and drinking water will be provided.

(Emphasis added.)

Rule 20 is not a model of clarity. Subsections a and b define the offense: possession of drugs (subsection a) or possession of an instrument for the use or manufacture of a drug (subsection b).

Subsections c and d, on the other hand, do not define the offense but merely describe how the offense can be proven: positive urinalysis (subsection c) or failure to provide a urine sample (subsection d). Because subsections c and d do not define the offense, grammatically they should be unlettered paragraphs.

Moreover, we think subsection d can logically be considered as an extension—and therefore a part of—subsection c. Viewing these two subsections in this light, we think the rebuttable presumption in subsection c applies to subsection d. Giving the two subsections this interpretation, we

think the two can be read to mean this: an inmate who has either a positive urinalysis or who fails to give a urine sample within two hours of a request is presumed to be in possession of drugs. This is a reasonable interpretation because presumably a greater indicator of drug use (positive urinalysis) would carry more weight than a lesser indicator of drug use (failure to provide a urine sample).

Our analysis finds support in how the prison disciplinary committee viewed and used rule 20 in these two cases.

In LuGrain's case, the committee made the following findings of fact which appear in its decision:

At 6:15 p.m. on 9–30–89 inmate was taken to the infirmary and informed that he was to provide a urine specimen to be tested for THC & that he had 2 hrs. to accomplish this or he'd receive a report. He tried several times but at 7:20 p.m. said that he had to go but "couldn't in front of anyone." He said he'd take a ticket—he was reminded he had some time left however he said lock me up.

In the "Evidence Relied On" section of its decision, the committee wrote:

*Inmate's claim of not being able to go in front of anyone is not credible.* He doesn't dispute the facts noted in the report by CO Wilson. CO Wilson's report, he witnessed inmate's decision not to continue to try but rather chose to be locked up 55 minutes before the deadline.

(Emphasis added.)

In Ross' case, the committee found the following:

On 9–30–89 @ 6:15 p.m. inmate was taken to the infirmary for collection of a urine specimen for testing for THC. Ross was told he had 2 hrs. to provide a urine specimen and failure to would result in a major report. At 8:20 a specimen had not been provided after attempting 3 times. He said he couldn't go in front of staff.

In the "Evidence Relied On" section of its decision, the committee noted it also declined to believe Ross:

Inmate admits he did not provide urine specimen within the allotted time. *Inmate's claim he couldn't go is not credible.* CO Heims' report—he witnessed. (Emphasis added.)

Clearly, the committee considered the inmates' defenses that they were unable to urinate in front of anyone. But the committee found the defenses not credible. In short, the committee allowed the inmates to present proof—their testimony—to rebut the presumption arising from their refusals. As we said, allowing a party to introduce proof in contradiction to a presumption distinguishes a rebuttable presumption from an irrebuttable one. The committee's decisions belie the inmates' claims that the committee irrebuttably presumed the inmates were guilty of drug possession because they were unable to produce a urine sample.

■ Similar reasoning led us to conclude that the Iowa Men's Reformatory had not violated a federal district court injunction. *See Rushing*, 382 N.W.2d at 144–45. The events leading to *Rushing* were these. Disciplinary committees at the Iowa Men's Reformatory had been finding inmates guilty of drug use solely on the basis of a positive urinalysis result. A federal district court found that this practice violated federal due process and enjoined the Reformatory from continuing it. *See Harmon v. Auger*, C 82–174 (N.D. Iowa 1983), *aff'd in part, rev'd in part*, 768 F.2d 270 (8th Cir.1985).

In *Rushing* we had occasion to decide whether the Reformatory had continued the practice in violation of the injunction. In that case, a prison disciplinary committee at the Reformatory had found two inmates guilty of drug use. In the "Evidence Relied On" section of the committee's decision, the committee had listed only the positive test results. The inmates seized upon this as evidence that the committee had considered the test results as irrebuttably and conclusively establishing the violation. In the postconviction hearing, a reformatory employee who had served on the committee that had decided both cases testified that in making its deci-

sion the committee had not solely relied on the test results. He testified that the committee—like the committee here—had also considered each inmate's testimony denying the charges. This was enough to convince us that the *Harmon* injunction had not been violated. *See Rushing*, 382 N.W.2d at 145; *see also, Spence v. Farrier*, 807 F.2d 753, 756 (8th Cir.1986) (holding that use of urinalysis test results in prison disciplinary hearing does not set up an irrebuttable presumption of guilt because prisoners are allowed to present defenses to rebut proof of urinalysis and they can challenge accuracy of test).

## V. *Sufficiency of the Evidence.*

■ LuGrain and Ross also contend the evidence was not sufficient to convict them of violating rule 20. Both point to undisputed evidence that no drugs were found in their possession, that they had never been charged with a drug related offense, and that both had never before been disciplined for possession of drugs. Finally, they argue that an inability to produce a urine sample is not sufficient to support a finding that the rule was violated.

The evidentiary standard for prison disciplinary cases was clearly stated and explained in *Superintendent, Massachusetts Correctional Inst. v. Hill*, 472 U.S. 445, 455–56, 105 S.Ct. 2768, 2774–75, 86 L.Ed.2d 356, 365 (1974) (citations omitted):

> We hold that the requirements of due process are satisfied if *some evidence* supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced...." *Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.* Instead, *the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.* We decline to adopt a more stringent evidentiary standard as a con-

stitutional requirement. Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context.

(Emphasis added.)

Under this standard we need not weigh in the balance the undisputed evidence LuGrain and Ross rely on. We need only concern ourselves with whether there is *any* evidence in the record to support the committee's decision.

Here the committee was not required to believe the inmates' unsubstantiated defenses that they were unable to urinate in front of people. Indeed, the committee expressly rejected the defenses as not credible. The clear inference from this rejection is that the committee found that the two inmates had *refused* to provide urine samples. This is far different from finding that the inmates were *unable* to do so, as they suggest. Because of the refusal finding, the presumption of drug possession remained unrebutted and was some evidence to support the committee's decision. *See Rametta v. Kaslo,* 68 A.D.2d 579, 580–82, 418 N.Y.S.2d 113, 114–15 (1979) (where evidence presented to rebut a presumption raises credibility issue, determination of whether the presumption has been defeated is for the trier of fact).

### VI. *Disposition.*

In sum, we hold that rule 20 sets up a rebuttable, rather than an irrebuttable, presumption of drug possession from a refusal to provide a urine sample within the allotted time. The rule is therefore not violative of federal due process as LuGrain and Ross suggest here. In addition, there was some evidence that both inmates refused to give urine samples within the allotted time. Both inmates failed to rebut the presumption of drug possession from this refusal. The presumption therefore remained as some evidence to support the committee's decision.

For all these reasons we affirm the judgment of the district court.

AFFIRMED.