Montez SHORTRIDGE, Appellant,

v.

STATE of Iowa, Appellee.

No. 90–1527.

Supreme Court of Iowa.

Dec. 24, 1991.

Philip B. Mears, Iowa City, for appellant.

Bonnie J. Campbell, Atty. Gen., and Kristin W. Ensign, Asst. Atty. Gen., for appellee.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, NEUMAN, and ANDREASEN, JJ.

NEUMAN, Justice.

Montez Shortridge, an inmate at the Iowa State Men's Reformatory, was disciplined for assault, disruptive conduct, and complicity following a brawl in the prison yard. After exhausting his administrative remedies, Shortridge sought postconviction relief. His petition challenged the constitutional sufficiency of the disciplinary notice given him, and charged the discipline committee with inadequacy in the assessment of confidential informant credibility.

The district court denied Shortridge's request for relief and he now appeals. The State has moved to dismiss the appeal on the ground Shortridge's right of appellate review is limited by Iowa Code section 663A.9 (1991), a recent amendment to the postconviction statute which directs an "applicant" to proceed by writ of certiorari.

Because section 663A.9, as amended, limits the appeal rights of prisoners, but not the State, we conclude it denies prisoner-appellants the equal protection of the laws. Proceeding to the merits of Shortridge's appeal, we find no merit in his contentions and affirm.

I. *Motion to dismiss.*

The incident giving rise to Shortridge's discipline occurred in May 1988, and Shortridge was found guilty of the offenses charged on May 13, 1988. Appeals to the warden and department of corrections were concluded by July 6, 1988. Shortridge filed his application for postconviction relief on January 3, 1989. Trial was held July 10, 1990, and the court's decision was filed September 9, 1990.

Meanwhile, the legislature amended the postconviction statute by limiting the right of direct appeal in prison disciplinary cases and authorizing, instead, a right to proceed by writ of certiorari. *See* 1990 Iowa Acts ch. 1043 § 1. The amendment, now codified at Iowa Code section 663A.9 (1991), provides:

> An appeal from a final judgment entered under this chapter may be taken, perfected, and prosecuted either by the applicant or by the state in the manner and within the time after judgment as provided in the rules of appellate procedure for appeals from final judgments in criminal cases. *However, if the applicant is seeking an appeal under section 663A.2, subsection 6 [from a disciplinary ruling resulting in loss of good conduct time], the appeal shall be by writ of certiorari.*

(Emphasis added.) The effective date of the amendment was July 1, 1990.

Because the district court's decision and Shortridge's notice of appeal were both filed after July 1, 1990, the State urges us to dismiss this appeal. Shortridge responds by claiming the amendment is substantive in nature and should apply only to actions arising after the effective date of the amendment. *See Schultz v. Gosselink,* 260 Iowa 115, 118, 148 N.W.2d 434, 436 (1967) (statutes relating to substantive rights generally apply prospectively only). In reply the State claims the amendment is merely procedural, altering only the mechanics of bringing an appeal. It argues that a prisoner's opportunity for appellate review—albeit in a different form—remains intact.

Beyond this procedural/substantive dichotomy lies Shortridge's alternate contention that the statute, on its face, violates his right to equal protection of the laws. Ordinarily, we prefer to avoid deciding cases on constitutional grounds, if another resolution is possible. *State v.*

*Trucke,* 410 N.W.2d 242, 243 (Iowa 1987). But the constitutional challenge posed by Shortridge will remain whether the statute is applied retroactively, or prospectively only. Thus considerations of judicial economy persuade us to address the constitutional question now in order to avoid future appeals resting on the same ground.

By its terms, the certiorari requirement of section 663A.9 applies only to an "applicant" seeking appellate review of a disciplinary ruling. It is evident from language used throughout the statute that "applicant" means a prisoner, not the State. Thus the State's right of direct appeal, authorized in the first sentence of section 663A.9, is unaffected by the certiorari amendment. Whether deliberate or unintentional, this legislated distinction creates two classes of appellants: one with a right of direct appeal and one without.

▬ It is true that the right of appeal is purely statutory, not constitutional, and may be granted or denied by the legislature as it determines. *Boomhower v. Cerro Gordo County Bd. of Adjustment,* 163 N.W.2d 75, 76 (Iowa 1968); *In re Chambers,* 261 Iowa 31, 33, 152 N.W.2d 818, 820 (1967). This court has held, however, that once a right of appeal is provided "[i]t may not be extended to some and denied to others." *Chambers,* 261 Iowa at 33, 152 N.W.2d at 820. When procedures enacted by the State serve to deny one person the right of appeal granted to another, equal protection of the law is denied. *Waldon v. District Court,* 256 Iowa 1311, 1316, 130 N.W.2d 728, 731 (1964).

▬ We are certainly mindful of the rationale underlying the legislature's apparent attempt to stem the flow of direct appeals in prison disciplinary cases. The appeals are numerous and repetitious, often involving complaints over trivial matters with little legal significance to the prison population at large. Endless avenues of appeal arguably demean the authority of correction officials to control behavior within the prisons. Moreover, the penalties being challenged are frequently less severe than those suffered by ordinary citizens for simple misdemeanors. Yet simple misdemeanor convictions are subject to discretionary review, not direct appeal. Iowa Code § 814.6(2)(d). Treating prison disciplinary decisions the same way would allow this court to conserve scarce judicial resources by granting certiorari in only those cases raising important questions of law related to prison discipline.

In fairness, however, whatever avenue of appellate review is deemed appropriate by the legislature, that right of appeal must be reciprocal. *People v. Sholem,* 238 Ill. 203, 208, 87 N.E. 390, 392 (1909); *Caddell v. Fiscal Court,* 258 Ky. 114, 116, 79 S.W.2d 407, 408 (1935); *Forston v. Heisler,* 341 P.2d 252, 256 (Okla.1959); *Texas Liquor Control Bd. v. Lanza,* 129 S.W.2d 1153, 1154 (Tex.Civ.App.1939). Iowa Code section 663A.9 plainly casts prisoners and the State in unequal roles insofar as appeal from adverse disciplinary decisions is concerned. Under the *Chambers* and *Waldon* decisions cited above, that inequality cannot be permitted. Thus we hold that so long as the State is still afforded a right of direct appeal from prison disciplinary decisions, that right must extend to prisoners as well. Any amendment to this statutory scheme must be reciprocal in its application. Accordingly, we overrule the State's motion to dismiss and address Shortridge's appeal on its merits.

## II. *Sufficiency of notice and credibility of confidential informants.*

▬ A. The written notice requirement in prison disciplinary cases is designed to give the inmate "a chance to marshal the facts in his defense and to clarify what the charges are, in fact." *Wolff v. McDonnell,* 418 U.S. 539, 564, 94 S.Ct. 2963, 2978, 41 L.Ed.2d 935, 955 (1974). To meet this standard, the notice must contain (1) the date, general time, and location of the incident; (2) a general description of the incident giving rise to the charges and citation to the rules allegedly violated; and (3) identity of other persons involved in the incident. *Rinehart v. Brewer,* 483 F.Supp. 165, 169 (S.D.Iowa 1980).

■ Shortridge asserted in the district court, and now argues on appeal, that the notice he received was too factually vague to enable him to prepare a defense. The district court disagreed, summarizing the salient features of the notice as follows:

> [O]n May 2, 1988, the Applicant [Shortridge] confronted another inmate, Inmate Brown, creating a situation in which associates of the Applicant supported him with violence which was in turn opposed by other violence, resulting in a brawl between numerous inmates.

The notice also described Shortridge's alleged gang-related asociations that led to the altercation, but noted that he withdrew from the confrontation once the brawl began.

Based on our review of the record, we believe the court's summary accurately characterized the notice, and that the notice furnished sufficient factual detail to apprise Shortridge of the offenses for which he was ultimately found guilty: complicity in an assault and disruptive conduct that bordered on riotous conduct.[1] The assignment of error is without merit.

■ B. The adjustment committee's findings were also supported by numerous statements gathered from confidential informants by an investigator. At trial, Shortridge's counsel asked the investigator whether it was prison policy to inquire whether the informants gave their information in the hope of receiving something in return. The investigator replied that no such policy of inquiry was formalized within the institution.

On appeal Shortridge claims there can be no good-faith determination of reliability without such inquiry and the failure to require it offends due process. We cannot agree. Factually, there is no basis for us to conclude under this record that the informants' testimony was tainted by their belief, real or imagined, that by testifying they would reap some benefit. We draw this conclusion from the investigator's uncontroverted testimony that no leniency was offered or given the informants, consistent with the institution's policy not to do so.

Moreover, due process does not require disciplinary officials to give written reason for believing confidential information to be credible. *Niday v. State*, 353 N.W.2d 92, 94 (Iowa 1984). An inmate's interest in a fair hearing requires only that there be "some indication of the confidential informant's reliability." *Howard v. State*, 439 N.W.2d 193, 195 (Iowa 1989). As we said in *Niday*, "[a]ll that is required is a record which provides a fair method of review." *Niday*, 353 N.W.2d at 94.

■ Here the record reveals that the disciplinary committee relied not only on statements from confidential informants, but on the investigator's and Shortridge's own statements. The investigator's specific finding of credibility rested on the consistency of the various informants' statements concerning gang-related associations leading up to the conflict. Shortridge corroborated these conclusions by acknowledging that just preceding the brawl he had confronted another inmate who had allegedly criticized Shortridge for his choice of prison companions. Like the district court, we think there is sufficient support in this record for the credibility finding made.

No ground for reversal appears.

AFFIRMED.

---

1. Additional charges of fighting, threats, sexual misconduct, and verbal abuse were found un-substantiated by the evidence.