Rolander GILES, Appellant,

v.

STATE of Iowa, Appellee.

No. 92–1901.

Supreme Court of Iowa.

Jan. 19, 1994.

Patrick E. Ingram and Brian G. Ellsworth of The Mears Law Office, Iowa City, for appellant.

Bonnie J. Campbell, Atty. Gen., and William A. Hill, Asst. Atty. Gen., for appellee.

Considered by HARRIS, P.J., and LAVORATO, NEUMAN, SNELL, and ANDREASEN, JJ.

NEUMAN, Justice.

Rolander Giles, an Iowa State Penitentiary inmate, was disciplined for playing a radio too loud in his prison cell. The matter is before us on Giles' appeal from the district court's refusal to grant postconviction relief. The State not only urges affirmance, it claims Giles has no right of direct appeal and must proceed, instead, by writ of certiorari. We conclude that Giles is entitled to proceed

by direct appeal, but we affirm the district court on the merits.

I. *Background facts and proceedings.* On November 2, 1991, a correctional officer heard loud music coming from Giles' cell and ordered him to lower the volume on his radio. Giles complied with the order. Two hours later, the officer again heard loud music coming from Giles' cell. As the officer approached the cell, Giles turned down the radio. Giles was cited for violating disciplinary rule 27 (disruptive conduct) and rule 23 (disobeying a lawful order).

A prison disciplinary committee found Giles guilty of both infractions, sanctioning him with 180 days' loss of radio privileges and good conduct time. On Giles' institutional appeal, the warden reduced the sanction to loss of thirty days' radio privileges and sixteen days' good conduct time. After unsuccessfully appealing the warden's decision to the department of corrections, Giles sought postconviction relief in the district court pursuant to Iowa Code section 663A.2(6) (1991).[1]

On appeal from the district court's refusal to grant postconviction relief, Giles contends the evidence was insufficient to sustain the warden's findings and that he should have been afforded counsel substitute. He resists the State's contention that Iowa Code section 663A.9, amended in 1992 by Senate File 2097, section 38, requires him to challenge the court's order by writ of certiorari. Giles asserts that (1) the amendment has no application to disciplinary actions arising before July 1, 1992, and (2) Senate File 2097 violates the single subject and title requirements of article III, section 29 of the Iowa Constitution.

Further facts will be detailed as they pertain to the arguments presented.

II. *Applicability of Iowa Code section 663A.9.* Prior to July 1, 1990, postconviction applicants (and the State) had a right of direct appeal from adverse prison disciplinary rulings. *See* Iowa Code § 663A.9 (1989). An amendment effective July 1, 1990, however, required prisoners challenging loss of

good conduct time to proceed by writ of certiorari. *See* 1990 Iowa Acts ch. 1043, § 1. In a subsequent case challenging the amendment, we held that because the new statute limited the appeal rights of prisoners—but not the State—it unconstitutionally denied prisoner-appellants equal protection of the laws. *Shortridge v. State,* 478 N.W.2d 613, 615 (Iowa 1991). The legislature responded by amending section 663A.9 once again, this time substituting the words "a party" for "the applicant," thereby making the certiorari requirement applicable to the State as well as inmates. *See* S.F. 2097, 74th G.A., § 38 (Iowa 1992). The statute as amended reads:

> An appeal from a final judgment entered under this chapter may be taken, perfected, and prosecuted either by the applicant or by the state in the manner and within the time after judgment as provided in the rules of appellate procedure for appeals from final judgments in criminal cases. However, if a party is seeking an appeal under section 822.2, subsection 6, the appeal shall be by writ of certiorari.

1992 Iowa Acts ch. 1212, § 38 (now codified at Iowa Code § 822.9 (1993)).

The amended statute raises two questions pertinent to this appeal. First, does the amendment apply to inmates, like Giles, whose disciplinary actions preceded the amendment's effective date? And, second, does the amendment—contained in a "corrections bill"—violate article III, section 29 of the Iowa Constitution?

■ As to the first question, Giles mistakenly asserts that the amendment applies only to discipline occurring after July 1, 1992. Unless otherwise indicated, statutes controlling appeals are those in effect at the time the judgment appealed from was entered. *James v. State,* 479 N.W.2d 287, 290 (Iowa 1991); *Ontjes v. McNider,* 224 Iowa 115, 118, 275 N.W. 328, 330 (1937). Senate File 2097 was in effect in October 1992 when the district court denied Giles' application for postconviction relief. Thus, were there no other impediment to the application of the amend-

---

1. Subsequent to these events, Iowa Code chapter 663A was recodified and now appears at chapter 822 (1993).

ed statute, Giles would be required to proceed by petitioning for writ of certiorari.[2]

There is merit, however, in Giles' alternate contention that Senate File 2097 violated the single subject and title requirements of article III, section 29 of the state constitution. The pertinent constitutional text reads:

Every act shall embrace but one subject, and matters properly connected therewith; which subject shall be expressed in the title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title.

Iowa Const. art. III, § 29. The purpose of the title requirement is to provide reasonable notice to lawmakers and the public regarding proposed legislation, thereby preventing surprise and fraud. *Western Int'l v. Kirkpatrick*, 396 N.W.2d 359, 365 (Iowa 1986). Likewise, the single-subject requirement discourages "logrolling" (the passage of unfavorable legislation on the coattails of more favorable proposals), keeps legislators apprised of pending bills, and alerts citizens to matters under legislative consideration. *State v. Mabry*, 460 N.W.2d 472, 473 (Iowa 1990). To survive constitutional scrutiny,

all matters treated [in an act] should fall under some one general idea and be so connected with or related to each other, either logically or in popular understanding, as to be part of ... one general subject.

*Long v. Board of Supervisors*, 258 Iowa 1278, 1283, 142 N.W.2d 378, 381 (1966).

The amendment at issue was embraced in an act entitled "Corrections Bill" that described its purpose this way:

An act relating to statutory corrections which may adjust language to reflect current practices, insert earlier omissions, delete redundancies and inaccuracies, delete temporary language, resolve inconsistencies and conflicts, update ongoing provisions, or remove ambiguities, and providing a retroactive applicability provision, and providing effective date and applicability provisions.

As Giles correctly notes, Senate File 2097 embraces wholly unrelated code provisions ranging from juvenile justice to day care. Normally, in a code correction bill—designed to incorporate nonsubstantive and lexicographical changes—such a lack of logical connection would not be fatal. *Western Int'l*, 396 N.W.2d at 364–65. When such a bill incorporates substantive changes, however, the portions that violate article III, section 29 must be stricken. *Id.* at 365.

The State argues that the minor revision of section 663A.9, making it equally applicable to the State and its inmates, was properly included in a correction bill. *See id.* at 364–65 (omnibus bill that merely incorporates technical, as opposed to substantive, changes does not violate constitutional mandates). Giles counters that the legislature's egalitarian move was substantive in nature, thereby rendering its placement in a correction bill inadequate to pass constitutional muster.

The State's argument that the amendment merely corrected a technical defect misinterprets our *Shortridge* decision. The case did not merely clarify the language of section 663A.9; *Shortridge* resulted in a return to the right of direct appeal for post-conviction applicants appealing from adverse prison disciplinary rulings. *LuGrain v. State*, 479 N.W.2d 312, 314–15 (Iowa 1991). Section 38 of Senate File 2097 changed that right of review from a direct appeal to petition by writ of certiorari. Such an alteration worked not merely a technical or lexicographical revision, but a substantive change in appeal rights. Incorporating such a change in a Code correction bill violates the single subject and title requirement of the Iowa Constitution. *Western Int'l*, 396 N.W.2d at 365.

---

2. The misstep of filing an appeal, rather than petitioning for writ of certiorari, is ordinarily not fatal to our review. *See Shannon v. Hansen*, 469 N.W.2d 412, 414 (Iowa 1991). We proceed as if a petition for writ of certiorari were filed. Iowa R.App.P. 304; *Hearity v. Iowa Dist. Court*, 440 N.W.2d 860, 862 (Iowa 1989). Unlike a direct appeal, however, a petition for writ of certiorari may be granted or denied at the discretion of the court.

We note that the amendment at issue is now codified in Iowa Code section 822.9, thereby eliminating the constitutional defect. *See Mabry*, 460 N.W.2d at 475 (codification of challenged legislation cures constitutional defect in title or subject matter). Giles' challenge is valid, however, because he raised it prior to codification. *Id.* We must therefore consider his appeal on the merits.

III. *Merits of the Disciplinary Action.*

■■■ A. *Sufficiency of the evidence.* Giles asserts that his discipline should be rescinded because the record is inadequate to support a finding that he violated rule 23. Our review of his claim is for the correction of errors at law. *Bonds v. State*, 447 N.W.2d 135, 136 (Iowa 1989). The district court is entitled to affirmance if "some evidence" exists to support the committee's ruling. *Backstrom v. State*, 508 N.W.2d 705, 710 (Iowa 1993); *Wilson v. Farrier*, 372 N.W.2d 499, 502 (Iowa 1985).

Rule 23 provides:

> *Disobeying a Lawful Order:* An inmate commits an offense under this subsection when the inmate refuses to obey an order, rule, regulation, or procedure, written or verbal, given by any staff of the Division of Corrections, or other person in authority, which is reasonable in nature, and which gives reasonable notice of the conduct expected.

Rules, Regulations and Disciplinary Procedures for the Government of the Iowa State Penitentiary Inmates II–G–52 (1984). We have noted that rule 23 contains two key words: "refuses" and "given." *Harper v. State*, 463 N.W.2d 418, 420 (Iowa 1990). The term "refuses" implies that (1) the prisoner received a direct order to cease behavior violative of a rule, and (2) the prisoner declined to obey such order by continuing the offensive behavior. *Id.* "Given" implies that (1) the order must come from a staff member or other authoritative source, and (2) the order was communicated to the prisoner. *Id.* at 420–21.

■■■ Giles contends that no evidence existed for the disciplinary committee to find, under *Harper*, that he violated rule 23. We cannot agree. The correctional officer gave Giles a direct order at 3:00 p.m. to turn down his radio, an order with which Giles complied. The disciplinary committee determined that Giles violated rule 23 at 5:15 p.m. when he allegedly continued his offensive behavior by raising the volume of his radio. Although Giles claims a lack of notice that his loud radio violated the order given two hours earlier, the district court relied on the correctional officer's statement that "when inmate Giles saw me, he turned his radio down." The court found that, because the officer said nothing to Giles before coming into view, Giles' responsive action revealed his knowledge of the violation. Thus, the court ruled, "some evidence" supported the disciplinary decision.

We find no error in the district court's ruling. Under the "some evidence" standard, the district court must simply determine whether a factual basis exists for the disciplinary committee's ruling. *Wilson*, 372 N.W.2d at 502. The district court noted that evidence of continuing loud music would not ordinarily suffice to constitute a refusal by Giles to obey the prior order. Giles' action upon seeing the officer, however, revealed sufficient circumstantial evidence of his state of mind to support a finding under the "some evidence" standard that he knew his conduct was wrongful. *See Superintendent v. Hill*, 472 U.S. 445, 457, 105 S.Ct. 2768, 2775, 86 L.Ed.2d 356, 366 (1985).

■■■ Giles also claims that prison authorities abused their discretion by transforming his minor offense (loud radio) into a major offense (disobeying order), thereby increasing his punishment. In support of his argument, he relies again on *Harper*. *Harper*, however, does not advance Giles' position. In *Harper*, the disciplinary committee found that the applicant had committed a major offense—disobeying a lawful order—by engaging in a minor offense—jiggering. *Harper*, 463 N.W.2d at 419. We held that while the applicant may have committed jiggering, no evidence supported a finding that he was given, and refused to obey, an order to cease jiggering, the basis for the more onerous rule 23 violation. *Id.* at 421. Our decision held that prison authorities lack discretion to

charge a more serious offense when only a minor offense has been committed. *Id.*

As already noted in this opinion, the record supported a finding that Giles disobeyed a lawful order by continuing to disrupt the tranquillity of the institution. Therefore, *Harper*'s concerns regarding prison officials' unfettered discretion are not implicated. Giles was correctly charged with the more serious rule 23 infraction.

**B.** *Counsel substitute.* Finally, Giles contends that his due process rights were violated when he was not provided counsel substitute at his disciplinary hearing. Because this issue implicates constitutional concerns, we review it in light of the totality of the circumstances and the record upon which the postconviction court's ruling was made. *Rushing v. State,* 382 N.W.2d 141, 143 (Iowa 1986).

Inmates in prison disciplinary proceedings have no right to either retained or appointed counsel. *Wolff v. McDonnell,* 418 U.S. 539, 570, 94 S.Ct. 2963, 2981, 41 L.Ed.2d 935, 956 (1974). When an inmate is illiterate or the issues are complex, however, due process requires officials to provide the inmate with some form of counsel substitute. *Id.* at 570, 94 S.Ct. at 2982, 41 L.Ed.2d at 959; *Fichtner v. Iowa State Penitentiary,* 285 N.W.2d 751, 758–59 (1979). The Iowa State Penitentiary has codified *Wolff*'s requirements in its rules, providing:

> The inmates have no rights to retained or appointed counsel, although assistance from staff should be allowed for inmates in need of assistance or where the complexity of the issues makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case.

Rules, Regulations and Disciplinary Procedures for the Government of the Iowa State Penitentiary Inmates II–G–63 (1984). Giles asserts that he is borderline mentally retarded, on psychotropic medication, and functionally illiterate. Thus he claims constitutional entitlement to counsel substitute under *Wolff.* The record as a whole, however, convinces us that Giles' due process rights were not violated.

The district court's ruling rested on the administrative law judge's (ALJ) testimony that Giles had no trouble communicating his complaints, was aware of the charges against him, and ably presented a defense. The ALJ also noted that the issues presented in Giles' case were simple and straightforward—either he was ordered to turn down his radio and refused, or he was not given an order. Based on this evidence, the court found that Giles possessed the necessary ability and information to defend against the charges.

We concur in the court's judgment. The record reveals that Giles completed the eleventh grade, albeit through special education classes. Although his pleadings contain numerous grammatical and spelling errors, his challenges and defenses are clear. Giles marshaled the exculpatory testimony of another inmate who contended that Giles' radio had not been turned up. The record also shows that Giles was no stranger to disciplinary proceedings. At the time of this offense, his radio privileges had just been reinstated following a ninety-day suspension. Finally, the case is not complex. While Giles makes much of the fact that he was personally unfamiliar with *Harper,* nothing in *Wolff* compels appointment of counsel substitute simply because an inmate lacks legal sophistication. *See Wolff,* 418 U.S. at 570, 94 S.Ct. at 2981, 41 L.Ed.2d at 959 (inmate not entitled to attorney but only to aid of prison staff or sufficiently competent inmate); *Backstrom,* 508 N.W.2d at 708 (right of counsel substitute not characterized as right to aid whenever prisoners cannot help themselves). No due process violation has been shown.

**AFFIRMED.**