Kenneth JAMES, Appellant,

v.

STATE of Iowa, Appellee.

No. 95–298.

Supreme Court of Iowa.

Dec. 20, 1995.

---

1. Effective January 2, 1995, DR 5–101(B) was renumbered DR 5–101(C).

Philip B. Mears, Iowa City, for appellant.

Thomas J. Miller, Attorney General, and Forrest Guddall and Layne M. Lindebak, Assistant Attorneys General, for appellee.

Considered by HARRIS, P.J., and CARTER, LAVORATO, SNELL, and ANDREASEN, JJ.

LAVORATO, Justice.

In this postconviction relief proceeding, the district court affirmed a prison disciplinary committee decision. The committee found that Kenneth James had violated a prison disciplinary rule prohibiting involvement in gang activity.

James' appeals to the warden and the Iowa department of corrections were denied. Following a hearing on James' postconviction relief application, the district court upheld the committee's decision. James appeals from the district court ruling on two grounds. The first ground concerns alleged procedural due process violations under guidelines established in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). The second ground is a challenge to the legal sufficiency of the evidence against him.

As to the procedural due process challenge, James contends that when prison officials charge inmates with disciplinary misconduct, the inmates have a fundamental right to a meaningful opportunity to be heard. The cornerstone of this right, James asserts, is an adequate opportunity to marshal facts and prepare a defense. James argues that prison officials disabled him from marshaling facts and preparing any kind of defense that was pertinent to the charge. They did this, he says, in three ways.

First, James contends the notice prison officials provided him was inadequate.

Second, he contends the rule he allegedly violated was unconstitutionally vague on its face and as applied to his conduct.

Third, he contends prison officials should provide inmates substitute counsel in complex cases—as he alleges this is—where the basis of the charge is supplied by confidential informants.

As to his sufficiency of the evidence challenge, James contends that under the "some evidence" standard, the record was insufficient to establish he violated the gang conduct rule.

We conclude the district court correctly found no reversible error occurred in the prison disciplinary proceeding. Accordingly, we affirm.

## I. *Background Facts.*

James became an inmate at the Iowa Men's Reformatory (IMR) in Anamosa in October 1993. Before January 6, 1994, James' counselor informed James there were rumors at IMR that James was involved in gang activity. James then secured a meeting with corrections officer Sperfslage. Sperfslage is the officer in charge of investigating alleged gang activity at the Anamosa facility. James testified Sperfslage reassured James that Sperfslage did not believe James was involved in gang activity. On January 6 Sperfslage notified James of disciplinary charges stemming from his investigation of James' alleged participation in gang conduct.

## II. *Background Proceedings.*

On January 13, 1994, James appeared before a prison disciplinary committee on this and other charges. The committee ultimately found him guilty of violating prison disciplinary rule 42. Rule 42 proscribes unauthorized group and gang conduct.

For James' violation of rule 42, the committee imposed (1) fifteen days of solitary confinement, (2) one hundred eighty days of level one disciplinary detention, and (3) loss of sixteen days good conduct time.

James' appeals to the warden and the Iowa department of corrections were denied. Following a hearing on James' postconviction relief application, the district court upheld the committee's decision.

It is from the adverse district court ruling that James appeals.

## III. *Manner of Review.*

Before July 1, 1990, postconviction applicants and the State had a right of direct appeal from adverse prison disciplinary decisions. *See* Iowa Code § 663A.9 (1989). Because of an amendment effective July 1, 1990, inmates were required to proceed with a writ of certiorari when challenging such decisions. *See* 1990 Iowa Acts ch. 1043, § 1. In *Shortridge v. State,* 478 N.W.2d 613, 615 (Iowa 1991), we ruled the amendment unconstitutional on equal protection grounds because the amendment limited the inmate's appeal rights but not the State's. Our decision in *Shortridge* returned to inmates the right of direct appeal in postconviction disciplinary proceedings. *See Giles v. State,* 511 N.W.2d 622, 625 (Iowa 1994).

After *Shortridge,* the legislature passed legislation changing the manner of review from a right of direct appeal to petition for a writ of certiorari. 1992 Iowa Acts ch. 1212, § 38. This change was codified in section 822.9 of the 1993 Iowa Code. In *Giles,* we ruled this legislation unconstitutional because it violated the single subject and title requirement of Article III, Section 29 of the Iowa Constitution. We held the constitutional challenge was valid because it had come before the legislation was codified at section 822.9. *Giles,* 511 N.W.2d at 625–26 (applying *State v. Mabry,* 460 N.W.2d 472, 475 (Iowa 1990), which held that codification of challenged legislation cures constitutional defect in title or subject matter).

Shortly after *Giles,* we decided *Bryson v. Iowa District Court,* 515 N.W.2d 10 (Iowa 1994) (per curiam). In *Bryson,* the inmate challenged his prison discipline by direct appeal. Because the inmate had not raised a constitutional challenge to the 1992 legislation codified at section 822.9, we held there was no impediment to the legislation's application. So we decided the inmate's challenge should have been by a writ of certiorari rather than by direct appeal. However, we treated the inmate's challenge as a petition for a writ of certiorari and decided the merits. *See* Iowa R.App.P. 304; *Bryson,* 515 N.W.2d at 11.

In *Tabor v. State,* 519 N.W.2d 378 (Iowa 1994), we put the matter to rest by clarifying *Giles* and *Mabry.* In *Tabor,* the inmate appealed from an adverse ruling on his challenge to a prison disciplinary decision. We interpreted *Giles* as holding that "the language in section 822.9 restricting review of prison disciplinary proceedings to a certiorari procedure was indeed invalidated in [*Giles* ]." *Tabor,* 519 N.W.2d at 380. We went on to explain, however, that "it was [not] our intention in *Giles* to limit the legal effect of that conclusion to a single litigant." *Id.* We explained that under *Mabry,*

> [t]he codification process only cuts off a right of constitutional challenge under Article III, Section 29 if no one has lodged such a challenge before codification is complete. If some litigant does lodge a constitutional challenge prior to codification of the flawed legislation and prevails, then the resulting invalidation of the statute inures to the benefit of other persons adversely affected by the legislation. As a direct consequence of the conclusions reached in *Giles,* the applicant's appeal from the judgment was properly taken as of right. A petition for certiorari was not required.

*Id.* (citation omitted).

*Tabor* makes it clear that section 822.9 is unconstitutional as far as *all* litigants are concerned. Now direct appeal rather than certiorari is the proper manner by which to challenge a district court ruling in a prison disciplinary proceeding. To the extent that *Bryson* holds otherwise, it is overruled. Here James appealed, and his case is therefore properly before us.

IV. *Procedural Due Process in Disciplinary Proceedings.*

Inmates retain certain basic constitutional rights, including the protections of the Due Process Clause in the Fourteenth Amendment to the federal Constitution. *Wolff,* 418 U.S. at 556, 94 S.Ct. at 2974, 41 L.Ed.2d at 951 ("Prisoners may also claim the protections of the Due Process Clause. They may not be deprived of life, liberty, or property without due process of law."). However, prison disciplinary hearings are not part of a criminal prosecution and for that reason inmates' rights at such hearings may be curtailed by the demands and realities of the prison environment. *Id.* at 556, 94 S.Ct. at 2975, 41 L.Ed.2d at 951.

Inmates have a constitutionally protected liberty interest in good time credits. *Id.* at 558, 94 S.Ct. at 2975, 41 L.Ed.2d at 951–52. So before prison authorities may forfeit those credits, such authorities must observe minimum requirements of procedural due process. *Id.* at 558, 94 S.Ct. at 2976, 41 L.Ed.2d at 952.

*Wolff* enumerates what due process requires when a prison disciplinary hearing may result in loss of such credits. These minimum procedural due process requirements include the following: (1) advance written notice of the charges; (2) an opportunity to call witnesses and present documentary evidence, provided that doing so will not jeopardize institutional safety or correctional goals; and (3) a written statement by the factfinder of the evidence relied upon and the reasons for the disciplinary action taken. *Id.* at 563–67, 94 S.Ct. at 2978–80, 41 L.Ed.2d at 955–57.

*Wolff* also recognizes an additional procedural due process requirement in prison disciplinary proceedings. Inmates are entitled to the aid of "counsel substitute." Counsel substitute does not include retained or appointed counsel. Rather, it includes a prison staff member or a selected inmate who will assist the inmate who is charged. *Id.* at 570, 94 S.Ct. at 2981–82, 41 L.Ed.2d at 959. The counsel substitute requirement is triggered if the inmate lacks the ability to read or faces particularly complex issues. *Id.* at 570, 94 S.Ct. at 2982, 41 L.Ed.2d at 959. With these principles in mind, we turn to the procedural due process issues in this case.

V. *The Procedural Due Process Issues.*

Because James raises constitutional issues, we review them "in light of the totality of the circumstances and the record upon which the postconviction court's ruling was made." *Giles,* 511 N.W.2d at 627. This is the func-

tional equivalent of de novo review. *Hinkle v. State*, 290 N.W.2d 28, 30 (Iowa 1980).

James argues prison authorities thwarted his ability to marshal facts and prepare a defense in three ways. First, they withheld essential details about what, how, when, where, and with whom, James allegedly did something constituting prohibited action as a gang leader. Second, they applied a vaguely worded rule to vaguely defined charges. Last, because the scope of information withheld from James was "unusually broad," prison authorities should have provided him with counsel substitute to aid him in preparing his defense.

We address each of these issues in turn.

A. *Inadequate notice.* The notice James received stated that he had violated rule 42 in addition to several other rules. The notice went on to state:

> On 10–18–93 inmate James was transferred to IMR from MSU for suspicion of gang activity. Upon arrival at IMR James was informed of IMR rules prohibiting gang activity.
>
> Investigation has revealed that *James has continued active involvement with the Gangster Disciples (GD) gang at IMR and has acted as a leader of the GD gang.*
>
> *Certain confidential information and the names of those providing this information have been deleted from the body of this report to preserve the peace, tranquility and orderly running of this institution.*

(Emphasis added.) Rule 42 provides:

> *Unauthorized Group/Gang Conduct:* An inmate commits an offense under this subsection when the inmate:
>
> a. Originates, promotes, participates in, recruits for, etc., any unauthorized group, organization, gang, clique, association, etc.; or,
>
> b. Communicates involvement in any unauthorized groups through written, verbal, physical appearance, hand signs, symbols, photographs, association with others, etc.; or,
>
> c. Possesses, creates, reproduces, or transmits any materials related to unauthorized group/gang activities.

James thinks the notice—absent the confidential details—was not specific enough to inform him of what he did to violate rule 42. The scope of the confidential information withheld from him was, in his words, "so broad that it deprived him of any means to marshal any relevant facts or to clarify what he was in fact being accused of doing." In sum, James argues, the notice he received was factually "too general to give him a fair chance to defend himself."

The State counters that James' notice was adequate to inform him of the alleged wrongful conduct he engaged in. The State points out that the deletion of confidential information from the notice was justified because of the need to maintain order, peace, and tranquility at IMR.

In *Backstrom v. Iowa District Court*, 508 N.W.2d 705 (Iowa 1993), we considered a similar issue. On the question of adequacy of the notice, we said:

> Our analysis, reflecting that of the Supreme Court, focuses on whether the prison officials have successfully apprised the inmate of the relevant charges. We look to the time, place and nature of the alleged activity, although we allow officials to delete some facts in the notice to the prisoner if disclosure threatens the security of the institution. For example, prison officials sometimes rely on confidential informants for incriminating information; revelation of certain names or facts may lead the prisoners charged with infractions to retaliate against the informants. If prison officials use confidential information in their investigation, however, they must state that fact in the disciplinary notice to the prisoner.

*Id.* at 708 (citations omitted).

In factual circumstances similar to those here, the Eighth Circuit in a recent case held that the notice there was constitutionally adequate. *See Freitas v. Auger*, 837 F.2d 806, 809 (8th Cir.1988). In *Freitas,* the notice advised Freitas that he had violated rule 41 (complicity). Specifically, the notice stated that (1) Freitas had conspired with others to escape, and (2) during the last sixty days, he had talked with other inmates about planning

an escape through the hobbycraft/school building. The notice also stated that the confidential informants' names were left out to preserve the peace and tranquility of the institution. *Id.*

On appeal of a decision adverse to him, Freitas argued that the notice he received was constitutionally inadequate because it did not give the dates when the alleged conversations about the escape took place, where they took place, the content of the conversations, and who participated in them. The court held that prison officials were justified in omitting this information because doing otherwise would risk revealing the identities of confidential informants. *Id.; see also Dawson v. Smith,* 719 F.2d 896, 897, 899 (7th Cir.1983) (notice only stated that inmate and his cellmate had planned to escape during October, 1977; all other information and its sources were confidential; held that notice was adequate and that providing prisoner with any more information would expose confidential informant's identity and result in security problems for the institution); *Gladson v. State,* 439 N.W.2d 214, 215–16 (Iowa App.1989) (disciplinary action based on an alleged escape plot; notice held adequate although it did not name inmate's co-conspirators and did not reveal how or when the escape was supposed to occur); *Morris v. Auger,* 414 N.W.2d 858, 859–61 (Iowa App. 1987) (notice only stated that "[d]uring the past thirty days, inmate . . . has threatened, harassed, assaulted, and otherwise coerced other inmates, attempting to gain sexual compliance from them"; all other information and its sources were confidential; held that notice was adequate and that providing any more specific factual information would seriously risk exposing identity of confidential sources of information); *Hair v. State,* 401 N.W.2d 198, 199–200 (Iowa App.1986) (notice to inmate specifying five-month period in which occurrence happened provided inmate with sufficient notice to prepare inmate's defense).

■ Applying *Backstrom, Freitas, Dawson, Gladson, Morris,* and *Hair* to the facts here, we think the notice James received was sufficient to enable him to marshal facts and prepare his defense. In short, we think the notice was constitutionally adequate. The notice generally informed James of the date the alleged rule infraction occurred. The notice stated the gang activity in which James allegedly took part occurred after he was transferred to IMR on October 18, 1993. The notice was issued January 6, 1994, about 80 days after James' transfer.

■ Administrative Law Judge (ALJ) Brimeyer testified that giving James more specific information about where he allegedly engaged in prohibited gang conduct and what he did would threaten the security at IMR by revealing to James the informants' identities. This is an adequate reason for withholding the specific date and time information James claims he was entitled to.

The notice adequately informed James of the substantive nature of the offense by informing him that he had violated rule 42. James could determine what prohibited conduct the institution thought he had engaged in from reading his copy of rule 42.

James' postnotice actions do much to belie his claim that, because he did not know the specific factual basis of the charge against him, he was unable to marshal facts and prepare a defense. He knew he was accused of having engaged in one or more of the prohibited behaviors listed in the rule. At the disciplinary hearing he presented the written statements of at least four correctional officers at IMR. Each testified as to a lack of personal knowledge of James' involvement as a gang leader. James also denied any involvement in gang activity.

In sum, the notice James received met due process requirements under the circumstances. It sufficiently informed James of the general time frame within which the alleged rule infractions occurred. It sufficiently informed James of the relevant charge against him—involvement in gang activity as a gang leader. And it sufficiently informed James that the charge was premised on confidential information.

### B. *Vagueness challenges to rule 42.*

James also argues that rule 42 is unconstitutionally vague (1) on its face, and (2) as it applies to him.

1. *Facial challenge.* In his application for postconviction relief, James asserted that rule 42 is unconstitutionally vague on its face because it gives inmates "insufficient notice of what sorts of interactions with other inmates qualif[y]" as promoting, participating in, or recruiting for an unauthorized gang. The State counters that constitutional concerns do not require prison rules to state with specificity all kinds of unauthorized group and gang conduct.

We resolve this issue with several precepts in mind. The general constitutional prohibitions against vagueness in criminal statutes do not apply because institutional disciplinary rules do not define crimes. *Wolff,* 418 U.S. at 556, 94 S.Ct. at 2975, 41 L.Ed.2d at 951; *Fichtner v. Iowa State Penitentiary,* 285 N.W.2d 751, 759 (Iowa 1979). Disciplinary rules are presumed valid and we favor an interpretation supporting the constitutionality of the rules. *Parker v. Levy,* 417 U.S. 733, 757, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439, 458 (1974). When sanctions such as the loss of good time are involved, disciplinary rules must, however, be intelligible enough to provide an inmate with adequate notice. *Fichtner,* 285 N.W.2d at 759.

We agree with the State that the ultraspecificity in prison rules James advocates is not a desirable requirement. The reason is obvious: Prison officials must have flexibility in administering their institutions, whose populations are in a constant state of flux. We refuse to encroach on this flexibility by imposing unreasonable and unrealistic standards such as those James suggests. He is not entitled to know every conceivable way his actions could violate rule 42. He is entitled to know what general categories of behavior will subject him to the rule. The rule plainly informs him.

We conclude rule 42 is intelligible. It provides inmates adequate notice that involvement in gang activity will not be tolerated. It informs inmates of what categories of behavior will subject them to the rule. The rule clearly covers the evidence presented of James' participation as a gang leader. This evidence was in the form of information from confidential informants. (The confidential information indicates that James' leadership role was in the form of giving directions to gang members.) In addition, the rule is logically and reasonably related to institutional security. *See, e.g., Bryson,* 515 N.W.2d at 12 (inmate in prison disciplinary proceeding conceded that "disruptive gang activity is a threat to institutional security and can be prohibited"). Rule 42 is not void for vagueness.

2. *"As applied" challenge.* In his appellate brief James fleshes out the general "as applied" challenge he raised in the district court. He appears to mount a two-pronged attack. First, he contends any "as applied" challenge is difficult to mount because he has been denied the opportunity to see the confidential information the committee relied on in reaching its decision. He further states that all he knew when attempting to prepare his defense was that he was charged with having acted as a gang leader in some way as defined by rule 42. So, he says, the rule unconstitutionally fails to put inmates on notice of what actions are prohibited.

Second, he argues that rule 42 is "indisputably broad." Rule 42 is so broad, James argues, that it denied him a fair opportunity to prepare his defense by not informing him of the specific conduct he allegedly engaged in contrary to the rule.

We have already disposed of James' first contention in our discussion in Division V"A". James knew enough about what the charge was to deny it. And he knew enough about what the charge was to present testimony from several correctional officers at IMR as to their lack of personal knowledge that he was involved in prohibited gang activity.

As to James' second contention, we are similarly unpersuaded. Because of institutional concerns, James was not entitled to confidential information containing specific details about his alleged involvement in gang activity. James was cited under rule 42 for prohibited activities *including* (a) originating, promoting, participating in, recruiting for, etc., a gang, and (b) communicating involvement in any unauthorized groups through written, verbal, physical appearance, hand signs, symbols, photographs, association with

others, etc. (Brimeyer testified the committee found that James had violated paragraphs A and B of the rule.) The text of rule 42 gave James a general idea of the categories of prohibited activity subjecting him to discipline. Rule 42 was constitutionally adequate to allow him to marshal facts and prepare a defense.

## C. *Counsel substitute.*

As we said, *Wolff* provides for lay assistance (also known as counsel substitute) to an inmate in postconviction proceedings when (1) the inmate is illiterate, or (2) the issues are complex. *Wolff,* 418 U.S. at 570, 94 S.Ct. at 2982, 41 L.Ed.2d at 959.

James' claim falls under the second prong because he makes no claim that he is illiterate. He argues here—as he did to the district court—that he was entitled to lay assistance from a counselor or other staff member because the issues in the case are complex. They are complex, James argues, because prison officials (1) withheld from James essential facts relating to the charge, and (2) failed to give James approximate times of the alleged misconduct. Essentially, James argues that whenever an inmate is having difficulty preparing a defense because of the prison's refusal to release confidential information to the inmate, the case is complex. In these circumstances, James asserts the institution should provide the inmate with assistance from a counselor or other prison official who should be allowed access to the confidential information. And once the official has viewed the confidential information, the officer should then assist the inmate in preparing the inmate's defense.

The State retorts that this issue is without merit under our caselaw. We agree for two reasons.

■ First, this is not a complex case. It is a simple case of an inmate being charged with violating an institutional rule prohibiting participation in gang activity. James understood the basis for the charge because he denied it. Further, he could not have gathered the statements of several IMR correctional officers to refute the allegation had he not understood what the allegation was. Our

court of appeals rejected the same argument James makes here:

> Sauls claims that because the case depended almost entirely on information supplied by confidential informants, it was complex and required someone to be able to examine the confidential information being used and make a determination as to the reliability of that information. We hold that the mere fact that the case involved confidential informants does not render the case so complex that Sauls required counsel substitute.

*Sauls v. State,* 467 N.W.2d 1, 3 (Iowa App. 1990) (citation omitted).

■ Second, even if this were a complex case, we held in *Backstrom* that substitute counsel does not have the authority to review confidential information in a prison disciplinary proceeding. *Backstrom,* 508 N.W.2d at 708. The reason for denying access is a fundamental one. "To allow counsel substitute to have access to confidential information in disciplinary proceedings would pose a major threat to the security, tranquility, and good order of our penal institutions." *Id.* at 709.

James, however, argues this rationale should not apply here because of Brimeyer's testimony on this point. Brimeyer testified that in his opinion allowing a prison counselor to review the confidential information and act as an advocate for the inmate would pose no security problem. Brimeyer thought that a counselor would be "sufficiently security minded" not to disclose any sensitive information to the inmate without first checking with the committee.

■ We, however, think there is a potential risk that the counselor might inadvertently reveal information to the inmate that would reveal the identities of the confidential informants to the inmate. That was part of our rationale in rejecting an inmate's suggestion that legal counsel be allowed to review confidential information and act as an advocate for the inmate. *See Howard v. State,* 439 N.W.2d 193, 194 (Iowa 1989) ("There are two risks associated with disclosure of confidential information to an inmate's counsel: that the information might be disclosed to

the inmate either intentionally or inadvertently by counsel."). We think this potential risk weighs in favor of applying the *Backstrom* rule here.

We find no due process violation on this issue.

## VI. *Whether "Some Evidence" Supports the Committee's Decision.*

The final issue James raises is that under the "some evidence" standard, there was insufficient evidence to support the committee's decision. James recognizes that whether he is right depends on our independent review of the confidential information. But he insists that in our review, we must also determine whether the committee properly established the reliability of the information and the informants. The State argues there was some evidence to support the committee's decision and that the confidential information the committee relied on was credible.

 Under the "some evidence" standard, "the relevant [legal] question is whether there is *any* evidence in the record" that could support the disciplinary committee's decision. *Superintendent v. Hill,* 472 U.S. 445, 455–56, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356, 365 (1985) (emphasis added). Informant statements by themselves are sufficient under the some evidence standard to support the committee's decision. *James v. State,* 479 N.W.2d 287, 291 (Iowa 1991). In addition, the disciplinary committee "has the right to rely on a confidential informant's statements and to disbelieve an inmate's denials, and it need not state why it believes the informant rather than the inmate." *Id.* But, as *James* suggests,

> [w]hen an inmate is disciplined on the basis of confidential information ... his interest in a fair hearing requires that there be some indication of the confidential informant's reliability. To that end, there must be sufficient information in the record to convince a reviewing authority that the disciplinary committee undertook such inquiry and correctly concluded that the confidential information was credible and reliable. The reliability of confidential information may be established by *inter alia, in camera* review of material documenting an investigator's assessment of the credibility of a confidential informant. *Id.* (citations omitted).

Tested by the foregoing principles, we think the committee's decision is supported by some evidence in the record. In addition, the record indicates the information was credible and reliable. The committee did the required credibility and reliability test James argues for and resolved it against him.

 At the prison disciplinary hearing, James denied any involvement in any gang activity at IMR. He presented testimony from several IMR officers who denied any knowledge of his involvement in gang activity. The committee initially questioned whether the informants' testimony was credible and reliable or was merely hearsay. The committee deferred a final decision and sent the matter back to Sperfslage for further investigation of these issues. The committee instructed Sperfslage in writing to meet with the informants and determine how they knew the statements they gave were true. Sperfslage was also instructed to ask the informants if they witnessed what they said happened or whether James admitted these things to them. Only after Sperfslage confirmed the credibility and reliability of the informants' statements and made a written report to the committee about how he did so, did the committee render a decision against James.

The district court confirmed the soundness of the committee's decision in an *in camera* review of the confidential information the committee relied on and said this:

> The court has examined the reliability of the confidential information and agrees with the disciplinary committee determination that the statements were consistent, credible, and that the informants had no reason to provide false statements. Therefore, the court finds sufficient evidence in the record to support the disciplinary action taken....

As James has requested, we have reexamined the credibility and reliability of the confidential information and we come to the same conclusion as the district court did.

We also conclude that the confidential information is some evidence to support the following findings of fact the committee made:

Decision: Rule(s) violated: 42

An investigation conducted by SCO Sperfslage indicates that while at IMR, you have been involved in gang activity as a leader of the Gangster Disciples gang. You had prior warning by staff at IMR not to be involved in gang activities at IMR. Confidential [information] w/o indicates that you have been involved in G.D. activities since your warning from IMR staff.

We refrain from being more specific than to say that the confidential information about James' active leadership role is based on the confidential informants' first-hand knowledge. More specifically, as the committee said in its decision, this leadership role was in the form of giving directions to other gang members.

VII. *Disposition.*

We conclude James' constitutional arguments are without merit. The notice James received regarding the rule 42 violation was sufficient to inform him of the charge and allowed him a fair opportunity to marshal facts and prepare a defense. Rule 42 is not unconstitutionally vague on its face nor as applied to James. James was not entitled to counsel substitute.

James' challenge to the sufficiency of the evidence also fails. The evidence presented was sufficient under the some evidence standard to support the committee's conclusion.

Finding no error, we affirm.

**AFFIRMED.**