Freddie THOMAS, Appellant,

v.

STATE of Iowa, Appellee.

No. 69287.

Supreme Court of Iowa.

Oct. 19, 1983.

Charles L. Harrington, Appellate Defender, and Raymond E. Rogers, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Gordon E. Allen, Sp. Asst. Atty. Gen., and Mark Hunacek, Asst. Atty. Gen., for appellee.

Considered by UHLENHOPP, P.J., and HARRIS, McCORMICK, LARSON and SCHULTZ, JJ.

UHLENHOPP, Justice.

■ This appeal involves questions of constitutional due process of law in prison disciplinary proceedings. We review de novo. *Snethen v. State,* 308 N.W.2d 11, 14 (Iowa 1981); *Fichtner v. Iowa State Penitentiary,* 285 N.W.2d 751, 752 (Iowa 1979). The burden is on the inmate alleging the constitutional violations to prove them by a preponderance of the evidence. *Kelly v.*

*Nix,* 329 N.W.2d 287, 291 (Iowa 1983); *Stanford v. Iowa State Reformatory,* 279 N.W.2d 28, 31 (Iowa 1979).

A riot occurred at the Fort Madison penitentiary on September 2, 1981. Plaintiff Freddie Thomas was an inmate. Training Officer Richard H. Barlow placed Thomas on report and charged him with participating in the riot, holding hostages, and possessing a homemade knife. A committee later held a hearing on Barlow's charges against Thomas and found:

> We are finding that on 9–2–81 you and other inmates participated in taking hostages in the basement of S1 Bldg. You had a knive in your possession and used it towards the hostages in a threatening manner You participated in robbing hostages of their possessions (clothing-money-jewelry, etc.) You did threaten hostages verbally and were participating in riotous conduct.

After stating the evidence relied on, the committee made the following disposition:

> Guilty—30 days Solitary (~~One~~ Ten in one out etc) followed by 24 months administrative segregation in Maximum Security—Loss of Honor Contract—Loss of TV, Radio, Tape Player.

In district court, Thomas challenged the disciplinary proceedings as violative of due process. After trial, the court dismissed the petition. Thomas appealed.

In this court Thomas advances two propositions: the committee violated his right to due process (1) in failing to state the reasons for the punishment inflicted and (2) in punishing him notwithstanding a grant of immunity to all inmates.

■ I. As to the committee's reasons for the punishment, the United States Supreme Court stated in *Wolff v. McDonnell,* 418 U.S. 539, 564–65, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935, 956 (1974):

> We also hold that there must be a "written statement by the factfinder as to the evidence relied on and reasons" for the disciplinary action. *Morrissey,* [*v. Brewer*] 408 U.S. [471] at 489, 92 S.Ct.

[2593] at 2604, 33 L.Ed.2d at 484. Although Nebraska does not seem to provide administrative review of the action taken by the Adjustment Committee, the actions taken at such proceedings may involve review by other bodies. They might furnish the basis of a decision by the Director of Corrections to transfer an inmate to another institution because he is considered "to be incorrigible by reason of frequent intentional breaches of discipline," Neb.Rev.Stat. § 83–185(4) (Cum Supp 1972), and are certainly likely to be considered by the state parole authorities in making parole decisions. Written records of proceedings will thus protect the inmate against collateral consequences based on a misunderstanding of the nature of the original proceeding. Further, as to the disciplinary action itself, the provision for a written record helps to insure that administrators, faced with possible scrutiny by state officials and the public, and perhaps even the courts, where fundamental constitutional rights may have been abridged, will act fairly. Without written records, the inmate will be at a severe disadvantage in propounding his own cause to or defending himself from others. It may be that there will be occasions when personal or institutional safety are so implicated, that the statement may properly exclude certain items of evidence, but in that event the statement should indicate the fact of the omission. Otherwise, we perceive no conceivable rehabilitative objective or prospect of prison disruption that can flow from the requirement of these statements.

See *Fichtner,* at 760 ("the committee had to state, at least briefly, the evidence relied on and the reasons for the discipline inflicted").

We hold that the statement of the committee's findings which we have quoted *itself* constitutes a statement of the reasons for the punishment and satisfies the requirement of a written statement of the reasons for the disciplinary action. A contrary holding would be unduly technical.

In our quotation from *Wolff,* the bases for the requirement of a statement of reasons are given. The written statement may assist in "review by other bodies." 418 U.S. at 565, 94 S.Ct. at 2979, 41 L.Ed.2d at 956. "Written records of proceedings will thus protect the inmate against collateral consequences based on a misunderstanding of the nature of the original proceeding." *Id.* Written records will help insure that administrators, and later even the courts, "will act fairly." *Id.* Records will reduce a disadvantage to the inmate in "propounding his own cause" or "defending himself from others." *Id.* The written statement of the committee in this case fulfills all of these objectives.

We do not find merit in the first proposition Thomas asserts.

■ II. As to the immunity proposition, we will assume arguendo that violation of a promise of immunity would violate due process and that an immunity agreement in a prison riot is enforceable. The district court found as a fact that Thomas was not promised immunity.

Upon examination of the record, we agree with the district court that Thomas did not establish by a preponderance of the evidence that he was promised immunity. The second proposition of Thomas is not meritorious.

We thus uphold the judgment.

AFFIRMED.