**Russell MAHAN and Bryon Miller, Appellants,**

v.

**STATE of Iowa, Appellee.**

**No. 94–793.**

Court of Appeals of Iowa.

Oct. 31, 1995.

Philip B. Mears of Mears Law Office, Iowa City, for appellants.

Thomas J. Miller, Attorney General, and Layne M. Lindebak, Assistant Attorney General, appellee.

Heard by DONIELSON, C.J., and HAYDEN and CADY, JJ.

CADY, Judge.

Russell Mahan and Bryon Miller appeal from a district court order denying postconviction relief for sanctions imposed by the Newton Correctional Release Center (CRC). We affirm the district court's order.

Mahan and Miller were inmates at the Newton CRC, a minimum security facility. In October 1992, the two men escaped from the facility. They were later apprehended and criminally prosecuted. After a hearing, the administrative law judge (ALJ) found both men in violation of the CRC's rule against escape and disciplined Mahan and Miller.

In its ruling, the ALJ noted Mahan's whereabouts were unknown until he was arrested in Council Bluffs, Iowa ten days after he escaped, and Miller's whereabouts were unknown until he was arrested in Carrol County, Illinois twenty days after his escape. The Newton CRC guidelines provide inmates

can lose up to 2000 days of their good time credits if they escaped from the facility.

In imposing sanctions, the ALJ recognized the serious nature of violation, the CRC recommendation and that the sanctions were within the CRC guidelines. In addition to other disciplinary sanctions, the inmates lost all of their accumulated good time. Mahan had accumulated and lost 1,458 days and Miller 1,835 days as a result of the sanctions.

Miller and Mahan appealed to the warden, but were unsuccessful. The two inmates subsequently filed applications for postconviction relief to the district court alleging an inadequate statement of reasons, arbitrary and capricious sanctions, and a need for additional procedural safeguards due to the severity of the sanctions. At trial, Larry Brimeyer, the Iowa Men's Reformatory hearing officer, testified he revokes 365 days of good time credit for escape as a matter of practice and the Iowa Medical and Classification Center hearing officer generally revokes 90 days of good time for work release escapees. The district court denied the applications noting the ALJ has discretion to assess sanctions in accordance with the severity of the inmate's behavior.

Mahan and Miller appeal claiming the ALJ violated their right to a statement of reasons for the particular punishment imposed. They further contend the withdrawal of good-time credit was arbitrary and capricious in violation of their due process rights. Finally, Mahan and Miller claim they were entitled to additional procedural safeguards to protect their due process rights since the penalty imposed effectively extended their prison sentences in excess of one year.

### I. Scope of Review

We recognize due process necessitates a written statement of reasons for the imposition of postconviction disciplinary action. *Wolff v. McDonnell,* 418 U.S. 539, 564–65, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935, 956 (1974). *See LuGrain v. State,* 479 N.W.2d 312 (Iowa 1991). An inmate is "not wholly stripped of constitutional protections when he is imprisoned for a crime." *Id.* at 555, 94 S.Ct. at 2974, 41 L.Ed.2d at 950. In *Wolff,* the Court acknowledged inmates have a liberty interest in their good-time credit, entitling them to certain procedural safeguards when prison officials purport to deprive such credits. *Id.* at 557–58, 94 S.Ct. at 2975–76, 41 L.Ed.2d at 951.

Postconviction proceedings are law actions, triable to the court, and ordinarily reviewed on error. *Kinnersley v. State,* 494 N.W.2d 698, 699 (Iowa 1993). Where there is an alleged denial of constitutional rights, we make our own evaluation of the totality of the circumstances in a de novo review. *Id.*

### II. Statement of Reasons

Miller and Mahan contend the rulings of the ALJ did not contain sufficient statement of reasons for the sanctions imposed. They contend the specificity of the statement of reasons should be dependent upon the severity of the punishment and complexity of the factual circumstances. Mahan and Miller argue the statements given by the committee failed to indicate why the specific penalty was chosen and why other inmates, who escaped from other institutions, receive lower penalties for the exact same violation.

The Supreme Court in *Wolff* also recognized a need for a balance between the institutional needs and objectives of the prison system and the due process provisions of the Constitution. *Id.* at 556, 94 S.Ct. at 2974, 41 L.Ed.2d at 951. It noted prison disciplinary proceedings "take place in a closed, tightly controlled environment, peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so." *Id.* at 561, 94 S.Ct. at 2977, 41 L.Ed.2d at 954. *See also Bruns v. State,* 503 N.W.2d 607 (Iowa 1993) (inmates involved in a prison disciplinary proceeding have a limited due process right and are not entitled to full due process protections afforded citizens charged with a crime). While due process requires at least a brief written statement by the fact finders as to the evidence presented and the reasons for the disciplinary action, justifications for the precise punishment inflicted are not necessary. *Bucklin v. State,* 342 N.W.2d 896, 898 (Iowa App.1983). The

committee must only "state why the punishment is being inflicted at all; i.e. specific findings of fact indicating petitioner's guilt which in turn points to the need for discipline of some kind." *Id.*

◼ Throughout its ruling, the committee stated reasons for the sanctions chosen including: the two men had escaped from the facility, Mahan's whereabouts were unknown for ten days, Miller's whereabouts were unknown for twenty days, the violation is of a serious nature, the sanctions were within the CRC guidelines, and CRC officials recommended the sanctions. Moreover, a separate statement of reasons is not necessary to satisfy due process if the factual findings on the alleged violation clearly constitute reasons for the discipline imposed. *Davis v. State*, 345 N.W.2d 97, 100 (Iowa 1984). We find here the statements given by the ALJ adequately satisfy the due process requirement of a statement of reasons for the punishment imposed.

We also find due process does not require a more particularized and individualized statement when the punishment is more severe. The purposes for the written statement of reasons are to both protect the inmate against collateral consequences based on a misunderstanding of the nature of the original proceeding and to ensure the officials, faced with potential scrutiny by state officials, the public and the courts, will act fairly. *Wolff*, 418 U.S. at 565, 94 S.Ct. at 2979, 41 L.Ed.2d at 956. Here the written statements provided by the hearing committee serve the purposes set forth in *Wolff*. The statements reflect the nature of the proceedings—a disciplinary action because the two men escaped. As well, the statements are sufficient for a reviewing body to determine if the officials acted fairly. The Newton facility need only give reasons for its decision to impose sanctions, and need not compare its choice of sanctions with other facilities. We find the statements provided by the disciplinary committee comport with due process.

## II. Withdrawal of Good Conduct Credit

Mahan and Miller further allege their due process rights were violated as the deprivation of all accumulated good conduct credit was arbitrary and capricious, given the excessiveness of the penalty, the lack of deliberation on the chosen penalty, inconsistencies between the Newton facilities penalties and other facilities, and the lack of Department of Corrections rulemaking to guide the imposition of the disciplinary penalties.

### A. Excessiveness of Sanction

Iowa Code Chapter 903A provides for the accrual of good conduct time and that "an inmate who intentionally escapes may forfeit all good conduct time accrued and not forfeited prior to escape." Iowa Code § 903A.2(2) (1993). *See Picard v. State*, 339 N.W.2d 368 (Iowa 1983).

◼ The Newton CRC rules allow the committee to revoke up to 2000 days of good conduct time for a person who escapes from the facility. This information was available to the inmates and designed to discourage escape at the minimum security prison. The sanctions imposed here fall within the statutory and CRC guidelines. The ALJ

> may order forfeiture of any or all good conduct time earned ... and has discretion ... to determine the amount of time that should be forfeited based upon the severity of the violation.

Iowa Code § 903A.3 (1993). The ALJ's decision to revoke the good time credit was made in light of the severity of the offense and was not arbitrary or capricious. This decision was well within discretion of the ALJ as the statute and CRC guidelines authorize such a sanction.

### B. Lack of Deliberation

◼ Mahan and Miller claim the ALJ's decision was arbitrary and capricious since the ALJ never deliberated on the sanction imposed, and merely followed the CRC's guidelines in revoking up to 2000 days. Again, the ALJ specifically noted its decision took into consideration the seriousness of the violation in assessing its sanctions. *See* Iowa Code § 903A.3 (1993). As such, the decision evidenced deliberation on the part of the ALJ.

### C. Inconsistencies with Other Institutions

■ Mahan and Miller further argue the ALJ's actions must be viewed as arbitrary as other institutions across the state revoke fewer days of good conduct time for the same violation. While other institutions may enforce different policies for its determination for the offense of escape, there are no statutory or Department of Corrections guidelines requiring uniformity among the different institutions. *See* Iowa Code § 903A.3 (1993); *Scott v. State*, 517 N.W.2d 718, 723 (Iowa App.1994) (the decision to revoke good conduct time lies in the discretion of the ALJ if within departmental regulations). The discretion given to the ALJ to determine the sanction imposed recognizes the unique nature of each institution. The decision of the ALJ at the Newton CRC, perhaps different than other ALJ's from other state institutions, was not arbitrary and capricious in light of the statutory authority.

### D. Lack of Department of Corrections Guidelines

■ Mahan and Miller finally argue the ALJ's decision was arbitrary and capricious because the department of regulations has failed to promulgate rules to guide the imposition of sanctions. They contend the failure to promulgate guidelines, in light of the vast inconsistency among the Iowa prison ALJ's, violates due process.

Iowa Code section 903A.4 states in part:

The director of the Iowa department of corrections shall develop policy and procedural rules to implement sections 903A.1 through 903A.3. The rules may specify disciplinary offenses which may result in the loss of good conduct time, and the amount of good conduct time which may be lost as a result of each disciplinary offense.

Iowa Code § 903A.4 (1993). This court has also recognized this statutory language does not mandate the Department of Corrections establish guidelines to control the discretion of the ALJ. *Scott v. State*, 517 N.W.2d at 723. Mahan and Miller, however, argue the Department of Corrections' decision not to establish guidelines resulted in a violation of due process.

We find the due process requirements set forth in *Wolff* do not necessitate uniformity in decision making in different prisons throughout the state. As well, the legislature implicitly recognizes the unique nature of the individual prison facilities, and grants discretion to the ALJ's to determine the proper sanctions in light of the surrounding circumstances and severity of the violation. Iowa Code § 903A.3 (1993).

Moreover, the evidence presented to the district court regarding the differences between certain institutions may not adequately reflect a true disparity in the decision making process between the prison ALJ's. The testimony of Larry Brimeyer indicated he, as a matter of practice, revokes only 365 days and another institution generally revokes only 90 days. Mahan and Miller also presented computer printouts of the sanctions imposed for escape violations throughout Iowa, indicating many persons received far fewer days of good conduct time revoked. This information does not take into account the unique characteristics of the individual disciplinary hearings, and may not reflect different decision making policies between the ALJ's. In light of the statutory discretion left to the ALJ to revoke "any or all good conduct time" in disciplinary proceedings for escape, the differences among ALJ's at different prison facilities may merely reflect unique characteristics of the individual violation.

The decision to revoke Mahan and Miller's good conduct time was well within the statutory allowance. The Department of Corrections may, but need not, set forth additional guidelines to comport with due process. We find no due process violation, even in light of evidence presented regarding different ALJ's choice of sanctions.

### III. Procedural Safeguards

Miller and Mahan also argue because the sanction imposed extends their prison sentence by more than one year, inmates should be entitled to additional procedural safeguards other than those prescribed in *Wolff v. McDonnell*. Specifically, they contend

they are entitled to some type of counsel in light of the severity of the sanction.

 Prison disciplinary proceedings are not part of criminal prosecution, and full panoply of rights due a defendant in such proceedings does not apply. *Mahers v. State,* 437 N.W.2d 565, 567–68 (Iowa 1989). *Wolff* requires certain minimal procedural safeguards to protect against a due process violation in prison disciplinary proceedings. *Wolff,* 418 U.S. at 571–72, 94 S.Ct. at 2980, 41 L.Ed.2d at 960. The *Wolff* Court, however, declined to hold inmates have a constitutional right to retained or appointed counsel in prison disciplinary hearings. *Id.* at 570, 94 S.Ct. at 2981, 41 L.Ed.2d at 959. Specifically, the introduction of attorneys into the disciplinary proceedings would make the hearings more adversarial, cause delay, and pose practical problems. *Id.* Inmates in prison disciplinary proceedings have no right to either retained or appointed counsel. *Giles v. State,* 511 N.W.2d 622, 627 (Iowa 1994); *Backstrom v. Iowa Dist. Ct. for Jones County,* 508 N.W.2d 705, 709 (Iowa 1993) *cert. denied,* —— U.S. ——, 114 S.Ct. 1566, 128 L.Ed.2d 211 (Iowa 1994).

▆ We find the requirement of a retained or appointed attorney to assist inmates in disciplinary proceedings is not necessary to satisfy due process. Here Mahan and Miller had the opportunity to defend their actions, contest facts, offer legitimate reasons for their escape and express mitigating factors. Mahan and Miller do not adequately show how counsel would be of value to the disciplinary proceedings where the proposed sanction is a revocation of at least 365 days of good conduct credit, especially in light of the inconvenience and intrusiveness to prison officials and hearing committees.

As well, Mahan and Miller inadequately demonstrate a need for counsel substitutes in prison disciplinary hearings where a revocation of at least 365 days is proposed in order to comport with due process. The *Wolff* Court indicated inmates who are illiterate or facing complex cases are entitled to counsel substitutes. *Id.* at 570, 94 S.Ct. at 2982, 41 L.Ed.2d at 959. Here neither Mahan nor Miller are illiterate. Their proceeding presented no unusual or complex issues of which a counsel substitute would be effective. *See*

*Sauls v. State,* 467 N.W.2d 1, 3 (Iowa App. 1990) (use of confidential informant does not render the proceedings complex to warrant a counsel substitute); *Giles v. State,* 511 N.W.2d 622, 627 (Iowa 1994) (inmate who was borderline mentally retarded not entitled to counsel substitute); *Langley v. Scurr,* 305 N.W.2d 418, 420 (Iowa 1981) (inmate who was not illiterate, was not faced with complex issue, and who never requested assistance from the staff in preparing a defense was not entitled to a counsel substitute).

We find Mahan and Miller were competent to represent their own interests in the disciplinary hearing and a counsel substitute was not required.

**AFFIRMED.**