Michael HARPSTER, Appellant,

v.

STATE of Iowa, Appellee.

No. 96–39.

Supreme Court of Iowa.

Sept. 17, 1997.

---

Phillip B. Mears of Mears Law Office, Iowa City, for appellant.

Thomas J. Miller, Attorney General, William A. Hill, Assistant Attorney General, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, CARTER, and SNELL, JJ.

SNELL, Justice.

Michael Harpster appeals the district court's denial of his application for postconviction relief, alleging that a disciplinary sanction of the forfeiture of 2000 days of accumulated good conduct time, subsequently reduced to 1000 days on administrative appeal, is excessive and improper under Iowa law and applicable constitutional safeguards. We affirm.

I. Background Facts and Proceedings

On June 17, 1994, Michael Harpster, an inmate at the Newton Correctional Release Center (CRC), a minimum security unit in Newton, left his work detail at Rock Creek State Park. Corrections officials apprehended him four hours later and ten miles from his original location. Prior to leaving the work area, Harpster alleges that he drank the remainder of a bottle of whiskey he found on the park premises and became drunk. He further alleges his intoxication made him so disoriented that he did not know the nature of his actions. The State charged him with escape and Harpster pled guilty to walking away from a correctional facility. He received a six-month sentence and a $250 fine. On the same day of the incident, the Newton CRC issued Harpster a disciplinary notice, citing a violation of the institutional rule prohibiting escape. However, corrections officials waited until completion of the criminal prosecution before initiating disciplinary proceedings.

A disciplinary hearing was held at the Newton CRC on August 9, 1994. The administrative law judge (ALJ) at the facility, Karen Rankin, found Harpster guilty of committing the Class I offense of escape, pursuant to Iowa Department of Corrections (DOC) rules. Harpster unsuccessfully raised intoxication as a defense, which Rankin noted in her decision. The ALJ imposed various sanctions including forfeiture of 2000 days good conduct time, fifteen days disciplinary detention, assessment of costs for the search, and transfer to a more secure facility. The Newton facility has a policy of taking away all good conduct time earned, up to 2000 days, for escape violations because of the need for strict sanctions for inmates released into community settings with limited supervision from the facility. According to testimony presented at the district court postconviction hearing, other minimum security facilities in the state impose only a 365–

day to 500-day loss of good conduct time for escape violations.

Harpster appealed the ALJ's decision first to the warden at the Newton CRC, who denied the appeal, and subsequently to the State's deputy director of institutions, who reduced the loss of good conduct time to 1000 days. After exhausting his administrative remedies, Harpster filed an application for postconviction relief pro se, claiming that the sanction was excessive and improper on both statutory and constitutional grounds. After obtaining counsel, Harpster amended his application to include a claim that prison discipline imposed for his escape after his criminal conviction on the same matter violated the constitutional protection against double jeopardy. At the district court level, Harpster only contested the loss of good conduct time, and that will be the only sanction considered on appeal.

After a hearing, the district court entered a ruling on December 18, 1995, denying Harpster's application for postconviction relief. The district court did not consider Harpster's double jeopardy argument on the basis that it was not raised during his administrative appeals.

## II. Scope of Review

Generally, appeal from denial of an application for postconviction relief is reviewed for errors of law. *Mabrier v. State,* 519 N.W.2d 84, 85 (Iowa 1994); *Hinkle v. State,* 290 N.W.2d 28, 30 (Iowa 1980). However, if the inmate raises issues of constitutional safeguards, review is made "in light of the totality of the circumstances and the record upon which the postconviction court's ruling was made." *Giles v. State,* 511 N.W.2d 622, 627 (Iowa 1994). This scope of review has been interpreted as being the equivalent of de novo review. *Hinkle,* 290 N.W.2d at 30. Therefore, Harpster's allegation that the forfeiture of good conduct time violates Iowa law is reviewed for errors of law, and his allegation that the discipline violates constitutional safeguards is reviewed de novo.

## III. Iowa Law

Iowa Code section 904.505 delineates standards for the use of discipline in Iowa's correctional facilities. *See* Iowa Code § 904.505 (1993). The statute provides that inmates who violate the rules of their facility "shall be punished by the imposition of the penalties prescribed in the disciplinary rules" of their institution. *Id.* The Iowa Code does not provide what type of punishment shall be imposed for particular violations, but rather grants that authority to the DOC and each institution. *Id.* In response to this grant of authority, the DOC developed a guide for disciplinary policy and procedure which establishes standards and procedures for Class I rule violations, including escape. *See* Division of Institutions, Department of Corrections, Disciplinary Policy and Procedure, Policy No. IN-V-36 (1992) [hereinafter Policy No. IN-V-36].

One type of punishment available to administrative law judges and disciplinary committees is the forfeiture of good conduct time earned by the inmate. Iowa Code chapter 903A provides the parameters for the reduction of an inmate's sentence by good conduct time. Section 903A.2 provides that inmates are eligible for a reduction of their sentence by one day for each day of good conduct. Further reductions are possible on a per month basis if the inmate "participates satisfactorily" in various employment, treatment, and educational programs. Iowa Code § 903A.2.

The statute requires the director of the DOC to develop rules to implement the good conduct time provisions. *Id.* § 903A.4. The statute provides that those rules may specify which offenses may result in loss of good conduct time and the amount of time which may be lost for each offense. *Id.* If no particular punishment is mandated, however, the administrative law judge may order forfeiture of any or all good conduct time earned up to the date of the violation. *Id.* § 903A.3. The statute provides that an administrative law judge "has discretion within the guidelines established pursuant to section 903A.4, to determine the amount of time that should be forfeited based upon the severity of the violation." *Id.* Furthermore, section

903A.2(2) provides that "an inmate who intentionally escapes may forfeit all good conduct time accrued and not forfeited prior to escape." *Id.* § 903A.2(2).

The DOC's regulations provide that "[i]n cases of escape, attempted escape, and serious or dangerous violence, the Administrative Law Judge shall determine a loss of any or all accumulated good conduct time." Policy No. IN–V–36, § (II)(C)(2)(a). The regulation provides that loss of good conduct time "shall be determined by the Administrative Law Judge and shall be based upon the Administrative Law Judge's view of the seriousness of the misconduct." *Id.* § (II)(C)(2). The regulations do not mandate a specific punishment for escape, however.

In addition to the responsibilities accorded the ALJ, the warden or superintendent of each institution is vested with certain responsibilities as to discipline. The rules provide that "[e]ach Warden/Superintendent shall assure a fair, unbiased, and orderly procedure for administering all disciplinary actions." *Id.* § (I)(B). Furthermore, the rules provide that ALJs "may be advised in [disciplinary] matters by other institutional personnel." *Id.* § (III)(A). As a supplement to the DOC rules, the Newton CRC has developed its own set of disciplinary sanction guidelines and provides that "[f]or escape or attempt to escape from grounds or supervision [the administrative law judge should recommend] loss of all good time earned up to 2000 days." Correctional Release Center, Disciplinary Sanction Guidelines, § (I)(A)(2) (1994).

On appeal, Harpster argues that ALJ Rankin automatically imposed a 2000–day loss of good conduct time for his escape violation and that such a practice violates Iowa law. The district court found that the ALJ's decision and punishment imposed were consistent with Iowa law. We agree with the decision of the district court.

Harpster's argument fails because the decision by ALJ Rankin to revoke 2000 days of good conduct time accumulated by Harpster was within the discretion granted by the Iowa Code and DOC regulations allowing the forfeiture of "any and all" good conduct time earned by the inmate. *See* Iowa Code § 903A.3; Policy No. IN–V–36, § (II)(C)(2)(a). Our courts have previously interpreted the language of the Iowa Code and DOC guidelines and held that any punishment imposed within the guidelines set forth is within the ALJ's discretion and does not violate Iowa law. In *Mahan v. State,* the Iowa Court of Appeals had occasion to review a similar decision made by an ALJ at the Newton CRC. *Mahan v. State,* 541 N.W.2d 918 (Iowa App.1995). In *Mahan,* the Newton ALJ revoked the entire good conduct time accumulated by two inmates after they were found guilty of violating the institutional rule prohibiting escape. *Id.* at 920. One inmate had accumulated 1458 days and the other 1835 days of good conduct time. *Id.* The court found that the CRC guidelines which recommended that the ALJ revoke all good conduct time accumulated, up to 2000 days, complied with the statutory and DOC guidelines. *Id.* at 921.

Other Iowa decisions have also considered the issue of discretion relative to the determination of the loss of good conduct time and have reached similar conclusions. *See Kistner v. State,* 547 N.W.2d 6, 8 (Iowa 1996) (holding that the forfeiture of 500 days of good conduct time "is soundly within the deputy director's discretion"); *Jones v. State,* 545 N.W.2d 313, 315–16 (Iowa 1996) (holding that a disciplinary penalty of the loss of 365 days of good conduct time "comported with statutory requirements"); *Scott v. State,* 517 N.W.2d 718, 723 (Iowa App.1994) (holding that the forfeiture of 916 days of good conduct time was "well within the departmental regulations and discretion of the ALJ"). These cases illustrate that Iowa courts have been reluctant to overturn decisions that are within the guidelines set forth by statute and departmental regulations, which clearly allow discretion by the ALJ to revoke any and all good conduct time accrued by an inmate.

This case is somewhat different from most cases decided on this issue, however, because Harpster has argued not that ALJ Rankin exercised her discretion improperly, but that Rankin exercised no discretion at all and that such lack of discretion violates Iowa law. Harpster argues that Rankin's discretion was improperly limited or prohibited by the guideline established by the Newton CRC for

punishment of inmates who violate the rule prohibiting escape. While there are no Iowa cases directly addressing this issue in the area of postconviction punishment, cases discussing the matter of discretion in sentencing procedure are helpful.

In criminal cases, sentences are upheld on review unless the judge exercised his discretion on grounds or for reasons clearly untenable or unreasonable. *State v. Loyd,* 530 N.W.2d 708, 713 (Iowa 1995) (citing *State v. Johnson,* 513 N.W.2d 717, 719 (Iowa 1994)). When a sentence is not mandated, a trial court must exercise discretion in determining the sentence to be imposed. *See State v. Washington,* 356 N.W.2d 192, 197 (Iowa 1984); *State v. Dvorsky,* 322 N.W.2d 62, 67 (Iowa 1982); *State v. Hildebrand,* 280 N.W.2d 393, 396 (Iowa 1979). Furthermore, "[t]he nature of the offense alone cannot be determinative of a discretionary sentence." *Dvorsky,* 322 N.W.2d at 67 (citing *State v. McKeever,* 276 N.W.2d 385, 387 (Iowa 1979)).

In *Dvorsky,* a case in which the defendant was convicted of involuntary manslaughter and sentenced to the maximum prison term, the trial court stated on the record and in its written decision that the reason for the sentence imposed was that " 'a person has lost their life as result of this incident.' " *Id.* The record did not disclose that the court considered any other relevant factors in reaching its decision; rather, the court based its sentence solely on the loss of life, "a necessary incident in every manslaughter prosecution." *Id.* Our court determined that such a lack of discretion was improper. *Id.*

Simply because a judge hands down consistent sentences does not necessarily indicate a lack of discretion. *See State v. Wright,* 340 N.W.2d 590, 593 (Iowa 1983). In *Wright,* the defendant argued on appeal that the trial court abused its discretion in sentencing because the judge imposed a predetermined sentence and did not consider the individual facts of the case. *Id.* at 593. The defendant showed that in a ten-month period preceding her sentence, thirty-two defendants in similar cases received nearly identical sanctions. *Id.* We found, however, that the court had not refused to exercise discretion because it did not rule out other options for sentencing. *Id.*

In the case at bar, while ALJ Rankin may have consistently imposed the same penalty for escape, this does not necessarily indicate an improper lack of discretion. Rankin testified at the postconviction hearing that she has authority to deviate from the guidelines established by the Newton CRC. Rankin also testified that she considers various factors in determining what sanctions to impose. Among the factors considered by Rankin in this case were that Harpster violated additional rules (*i.e.* drinking an alcoholic beverage and becoming intoxicated), that Harpster made a voluntary choice to leave his work area, and that Harpster could have committed other crimes during the four hours he was missing. While Rankin did not list these factors in her written decision,[1] her consideration of such factors in making her decision makes it clear she did not rule out other options. *See id.*

In addition to the case-specific factors considered by Rankin, there is an institution-specific reason underlying the consistent punishments for escape at the Newton CRC. The inmates at Newton are allowed to work outside the facility in surrounding communities. Because of this contact with the public and the concomitant lack of direct supervision, institution officials have determined it is necessary to impose stricter guidelines and more severe punishment to restrain individuals from attempting to escape.

We hold that ALJ Rankin properly exercised discretion in determining what sanctions should be imposed and that the sanctions do not violate Iowa law.

IV. Due Process

A. Background

In *Wolff v. McDonnell,* the United States Supreme Court enumerated the procedures

1. While the lack of written findings and reasons to support ALJ Rankin's decision are not decisive in this case, it would be prudent to include such findings in the written decision to avoid questions as to the basis for the decision and the appearance of impropriety in the decision-making process.

necessary to satisfy due process in prison disciplinary proceedings. The Court acknowledged that inmates have a liberty interest in the state-created right of good conduct time credit, which entitles them to certain procedural safeguards when prison officials revoke credit earned by an inmate. *Wolff v. McDonnell,* 418 U.S. 539, 557–58, 94 S.Ct. 2963, 2975–76, 41 L.Ed.2d 935, 951 (1974). Noting the environment in which prison disciplinary proceedings are held and the corresponding need for prison officials to maintain order and discipline, the Court named two procedures that must be provided to prisoners "if the minimum requirements of procedural due process are to be satisfied." *Id.* at 560–64, 94 S.Ct. at 2977–78, 41 L.Ed.2d at 955.

First, the prisoner must be provided with "advance written notice of the claimed violation" in order to give the prisoner an opportunity to "marshal the facts and prepare a defense." *Id.* at 563–64, 94 S.Ct. at 2978–79, 41 L.Ed.2d at 955. Second, there must be a " 'written statement by the fact finders as to the evidence relied on and reasons' for the disciplinary action." *Id.* at 564, 94 S.Ct. at 2979, 41 L.Ed.2d at 956 (quoting *Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484, 499 (1972)). Such a statement provides a written record for further review or collateral procedures and ensures that administrators will act fairly in meting out discipline because they are faced with "possible scrutiny by state officials and the public, and ... the courts." *Id.* at 565, 94 S.Ct. at 2979, 41 L.Ed.2d at 956.

The due process protections enunciated in *Wolff* have been recognized and reinforced by Iowa courts. *See, e.g., Bruns v. State,* 503 N.W.2d 607, 611 (Iowa 1993); *LuGrain v. State,* 479 N.W.2d 312, 315 (Iowa 1991); *Mahan,* 541 N.W.2d at 920–21.

B. Consideration and Rejection of Defenses

Harpster argues that underlying the right to prepare a defense and the right to a written statement of the reasons for the discipline imposed, there is "an implied right to have the defense actually considered by the disciplinary committee ... [and] as part of the right to present a defense, inmates are entitled to present arguments for mitigation of punishment." Harpster alleges that the ALJ did not consider the mitigating circumstances of his defense; namely, his intoxication and lack of intent or plan to escape. The State counters that Harpster's intoxication was not a mitigating circumstance, but instead was another violation of institutional rules. Furthermore, the State alleges testimony by the ALJ indicates she allowed Harpster to present his defense of intoxication and that she considered the defense and found it insufficient.

Iowa courts have noted that while inmates are afforded some procedural due process protections, they are not as extensive as the rights afforded citizens charged with a crime. *See Bruns,* 503 N.W.2d at 611 (citing *Wolff,* 418 U.S. at 556, 94 S.Ct. at 2975, 41 L.Ed.2d at 951). While the due process requirements set forth in *Wolff* require a written statement of the evidence relied on and the reasons for the sanction imposed, the statement need not provide justification for the precise punishment imposed. *Mahan,* 541 N.W.2d at 920 (citing *Bucklin v. State,* 342 N.W.2d 896, 898 (Iowa App.1983)). Nor is it necessary for the written statement to expressly indicate what statements were relied on in the reports considered by the ALJ or committee. *Speller v. State,* 534 N.W.2d 445, 451 (Iowa 1995) (citing *Brown v. Frey,* 807 F.2d 1407, 1412 (8th Cir.1986)). All that is necessary is a statement of why the punishment is being imposed, which is satisfied by "findings of fact indicating petitioner's guilt which in turn points to the need for discipline of some kind." *Bucklin,* 342 N.W.2d at 898. Furthermore, a separate statement of reasons is not necessary "if the factual finding on the alleged violation clearly constitutes the reason for the discipline imposed." *Davis v. State,* 345 N.W.2d 97, 100 (Iowa 1984).

We hold that the findings of fact made by ALJ Rankin and indicated in her written decision satisfy the standard enunciated by the cases cited above. The findings of fact state: "Mr. Harpster did leave his off-grounds work site.... He was picked up that evening ... approximately 10 miles

from the park. This is a violation of (CRC) rule 5 as Mr. Harpster did escape supervision." This statement indicates Harpster's guilt and points to the need for disciplinary action. *See Mahan,* 541 N.W.2d at 920 (citing *Bucklin,* 342 N.W.2d at 898). This factual finding "clearly constitutes the reason for the discipline imposed." *See Davis,* 345 N.W.2d at 100. The findings of fact written by ALJ Rankin are quite similar in format and content to those approved in *Thomas v. State,* which simply stated the factual findings that constituted the elements of the charged offenses. *Thomas v. State,* 339 N.W.2d 166, 167–68 (Iowa 1983). Requiring a more detailed statement of the reasons for the punishment "would be unduly technical." *Thomas,* 339 N.W.2d at 168.[2]

We also find that ALJ Rankin considered and dismissed Harpster's defense of intoxication. Her written decision makes note of the facts alleged by Harpster which precipitated his absence from his assigned work site. In the "evidence relied on" section, Rankin stated that she relied on Harpster's statement. Such notations demonstrate that Rankin took the defense under consideration. Even though the decision does not make an explicit finding as to that defense, we hold specific written rejection of Harpster's defense to be unnecessary.

Such a holding is supported by two of our prior opinions. In *Rushing v. State,* we rejected a contention that the written decision must contain a statement that the ALJ or discipline committee considered the inmate's proffered defense in reaching its decision. *Rushing v. State,* 382 N.W.2d 141, 144 (Iowa 1986). The *Rushing* court analogized the situation to that of a civil law nonjury case when a court has found in favor of the plaintiff. On review, the appellate court assumes that the district court considered and rejected each defense argued by the defendants even though not explicitly discussed in the ruling. *Id.* at 145. Furthermore, in *Speller v. State,* we found it unnecessary for the ALJ to specifically state that she was rejecting an inmate's defenses, as long as the decision showed that the defenses were considered. *Speller,* 534 N.W.2d at 450. Our finding today comports with this standard.

C. Arbitrary and Inflexible Penalty

Harpster also argues that the penalty imposed by ALJ Rankin violates due process because it is an inflexible, arbitrary penalty. As noted previously, the sanction was within statutory and regulatory guidelines authorizing the forfeiture of any and all good conduct time earned. *See* Iowa Code § 903A.2(2); Policy No. IN–V–36, § (II)(C)(2)(a). ALJ Rankin testified that she had the authority to deviate from the 2000–day sanction recommended in the CRC's Disciplinary Sanction Guidelines and that she considered various factors in imposing the contested disciplinary sanction on Harpster. Her written decision indicates that she found the violation to be properly classified as a major violation, demonstrating her estimation of the seriousness of the violation. The decision also indicates that she considered and rejected Harpster's defense of intoxication. Therefore, we find that the penalty imposed by Rankin was not arbitrary or inflexible, but based upon her determination of the serious nature of the offense and the lack of a credible defense.

D. Inconsistency of Punishment Among Institutions

Harpster further claims that the penalty consistently imposed by the Newton CRC reflects arbitrary and dramatic inconsisten-

2. It is important to note that there is no statute or regulation which requires a more detailed statement than that provided in ALJ Rankin's decision. The DOC's Disciplinary Policy and Procedure regulations provide that the written decision must include:

> a. A statement of the facts found to support the determination of a rule violation (the who, what, where, when, how of the offense).
>
> b. An indication of what these findings are based upon (officer's report, inmate's statement, etc.).
>
> c. The sanctions imposed.
>
> d. In those cases where personal or institutional safety may be jeopardized by including certain items of evidence in the written statement furnished the inmate, these items may be deleted. The statement shall indicate that such omissions have been made.

Policy No. IN–V–36, § (III)(D)(12).

cies in escape penalties in the Iowa system which are violative of due process. Testimony presented at the postconviction hearing indicated that ALJs at other institutions revoke fewer days of good conduct time for escape violations. There are no statutory or DOC guidelines which require uniformity in disciplinary sanctions among the different institutions. Iowa Code § 903A.3; *Mahan,* 541 N.W.2d at 922; *Scott,* 517 N.W.2d at 723 (holding that the decision to revoke good conduct time lies in the discretion of the ALJ if within DOC regulations).

The discretion granted to the ALJ at each institution via section 903A.3 recognizes the unique nature of each Iowa penal institution and allows consideration of the characteristics of the particular institution in determining appropriate punishment. At the postconviction hearing, James McKinney, Deputy Director for Institutions at the Iowa Department of Corrections, testified as to the differences that exist among Iowa's penal institutions. He indicated that the Newton CRC has a basis for stricter sanctions in the area of escape violations than those imposed by other prisons throughout the state. Inmates at Newton work with the public and are supervised only on a minimal basis. McKinney testified that this characteristic justified stricter guidelines and discipline. We hold that even though the decision reached by the Newton ALJ for Harpster's violation may differ from the penalty imposed for a similar violation at another institution, such a decision is not arbitrary and does not violate due process. Legitimate differences exist among institutions which justify the varying penalties imposed and statutory and regulatory authority allows for imposition of such a penalty.

V. Double Jeopardy Argument

The State claims Harpster failed to preserve error on the double jeopardy issue. We will not extend this opinion by discussing the State's error-preservation claim because even if Harpster preserved error, his double jeopardy argument would fail. *See State v. Beeson,* 569 N.W.2d 107, 109 (Iowa 1997).

VI. Disposition

In light of the foregoing conclusions, we affirm the district court's denial of Harpster's application for postconviction relief.

**AFFIRMED.**